UNITED STATES of America,
Plaintiff–Appellee,

v.

SAI KEUNG WONG,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

SUI KEUNG CHAN,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

PAK CHUEN IP, Defendant–Appellant.

Nos. 87–5124, 87–5132 and 87–5133.

United States Court of Appeals,
Ninth Circuit.

Submitted April 4, 1989 *.

Decided Sept. 25, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Jerry L. Newton, Newton and Newton, Hermosa Beach, Cal., for defendant-appellant, Pak Chuen Ip.

Robert C. Bonner, U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Chief, Crim. Div., Thomas A. Hagemann, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee, U.S.

Before WRIGHT, FARRIS and NELSON, Circuit Judges.

FARRIS, Circuit Judge:

Sai Keung Wong, Sui Keung Chan, and Pak Chuen Ip appeal their convictions of conspiracy to possess, distribute, and import heroin, possession with intent to distribute and import heroin, and importation of heroin. They contend that the district court abused its discretion by refusing to order disclosure of the identity of an informant and by refusing to order disclosure of Malaysian police reports. They also argue that the jury instructions were inadequate and that there was insufficient evidence to sustain their conviction. We affirm.

## I. BACKGROUND

In September 1986, Sweat Quen Chan, Li Ping Loh, Sui Keung Chan, and Sai Keung Wong arrived at Los Angeles International Airport from Kuala Lumpur, Malaysia. Each carried a false-sided suitcase loaded with heroin. Pak Chuen Ip and Cheuk Kit Ho, who had arrived in New York from Kuala Lumpur several weeks earlier, arrived at the airport in a rental car. Ho had pictures of two of the couriers, and Ip had the names of Sweat Chan and Loh and the couriers' flight itinerary.

At the airport terminal, Ho spoke briefly and discretely with Sweat Chan. Although Ip and Ho were well acquainted with at least two of the couriers, there was only one other communication made: When Ip drove up in front of the terminal with a Cadillac they had rented that morning, the couriers picked up their suitcases and made motions to go with Ho to the Cadillac, but Ho waived for them to stop. They put down their suitcases. Ip and Ho then drove around the airport once and waited in the car for about ten minutes, after which they drove off, returned the car, and took a taxi to a hotel, twenty five miles away, where they met the couriers. The couriers took a bus to the hotel with the tour group they were traveling with. At the hotel, Ho approached Loh and Sweat Chan and spoke with them. Loh and Sweat Chan then walked over to the tour director and canceled their room reservations. Sui Chan and Wong were carrying their suitcases and walking toward the taxi with Ip when they were arrested. Sweat Chan, Loh, and Ho were arrested inside the hotel.

These arrests resulted from cooperation between United States and Malaysian officials. The Royal Malaysian Police learned from a well-placed informant of the plan to import heroin and of the individuals to be involved. As the plan developed, the RMP kept the United States Drug Enforcement Administration informed of the situation and received DEA assistance in obtaining visas for the defendants. The DEA was informed of Ho's and Ip's departure to New York, where upon arrival they were under surveillance until it ceased for fear of discovery. Before the couriers left Malaysia, they were identified to DEA agents who took the same flight to the United States and were able to monitor the individuals' actions once in the United States. The DEA was also given a detailed description of the suitcases that would be used by the couriers to carry the heroin.

Based on this information, United States officials searched the suitcases and found sixteen pounds of nearly pure heroin with a total street value of over eight million dollars.

On September 23, 1986, an indictment was handed down charging all six defendants (Ip, Ho, Sui Chan, Loh, Sweat Chan, and Wong) with three crimes: (1) conspiracy to possess, distribute, and import heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a) & 960(a)(1); (2) possession, with intent to distribute, of more than one kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1), and (3) importation of heroin, in violation of 21 U.S.C. §§ 952(a) & 960(a)(1).[1]

On January 16, 1987, at a hearing on the defendants' motion to compel disclosure of the informant's identity, the district court indicated that the defendants had articulated a theory whereby the informant's testimony might be useful to their defense. Over the government's objection, with this "minimal threshold showing," the court conducted an *in camera* telephone interview with the informant to determine whether any basis existed for granting the motion for disclosure. Based on the information from that interview, Judge Rymer denied the motion for disclosure of the informant's identity on February 9, 1987.

The case proceeded to trial on February 13, 1987. The government introduced no evidence regarding the informant nor even called the informant's Malaysian Police contact, Mr. Choo Nyet Ching, who was in attendance at the trial. Its case was based on the DEA's surveillance of the defendants in Malaysia and the United States.

The jury began deliberations on February 20, 1987, and returned a verdict of guilty as to all defendants, on all charges, on February 25. The defendants were sentenced on April 24, and the judgments were entered by the court on May 7, 1987. Timely notices of appeal were filed by defendants Ip, Sui Chan, Wong, and Ho. Defendants Loh and Sweat Chan did not appeal. On January 9, 1989, we granted Ho's motion for voluntary dismissal of his ap-

peal. The remaining three appeals were consolidated, and Sui Chan and Wong both joined in Ip's opening brief, while the government adopted its brief in Ip's appeal as its brief in the other two appeals.

## II. *DISCUSSION*

### A. *Informant Identity*

■■■ We review for abuse of discretion the trial court's decision denying the motion for disclosure of the informant's identity. *United States v. Buffington*, 815 F.2d 1292, 1299 (9th Cir.1987). The government has a limited privilege to withhold the identity of confidential informants. *See Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. at 627–28. However, the Supreme Court "believes no fixed rule with respect to disclosure is justifiable." *Id.* at 59, 77 S.Ct. at 627. The Court identified the problem as one that

> calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. at 628–29. In practice these factors have focused on 1) whether the testimony would be "relevant and helpful" to the defendants' case, especially in terms of the relationship between the asserted defenses and the likely testimony of the informant, *see United States v. Hernandez*, 608 F.2d 741 (9th Cir.1979), which in turn will often depend on the degree of involvement by the informant in the charged crime, *see United States v. Teno-*

---

1. A superseding indictment was filed on January 13, 1987. The changes were technical.

*rio–Angel,* 756 F.2d 1505, 1509 (11th Cir. 1985), and 2) the government's interest in protecting the safety of an informant, *see United States v. Hernandez–Berceda,* 572 F.2d 680, 683 (9th Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2856, 56 L.Ed.2d 792 (1978).

■ The burden of proof is on the defendants to show need for the disclosure. *United States v. Buffington,* 815 F.2d 1292, 1299 (9th Cir.1987). The mere suspicion that information will prove helpful is insufficient to require disclosure. *Id.* In the present case, the trial court found a "minimal threshold showing" with regard to at least one defense, to justify the *in camera* interview, but insufficient information to justify disclosure.

Defendants assert that knowing the identity of the informant would have better enabled them to establish outrageous government conduct, entrapment, and lack of knowledge. We have reviewed the district court's *in camera* interview of the informant and *in camera* memorandum. The record supports the district court's conclusion that danger to the informant and the government's need to protect his identity and maintain the flow of information through him outweighs the need for his testimony by the defense. There is no indication that the informant could have provided any testimony that would have helped the defense establish outrageous government conduct, entrapment, or lack of knowledge.

In *Roviaro,* the defendant was charged with possession and sale of heroin. The defendant entered the informant's car, which had an officer in the trunk and other officers following it. After driving for a while and trying to lose a suspected tail, they stopped at the curb where the defendant got out of the car and walked to a tree. He reached behind the tree and returned with a pouch. He left it with the informant and then got into another car, which was waiting for him, before the police could stop him. When the officers reached the informant's car they found a pouch containing an opiate-derivative. This pouch and the conversation overheard by the officer in the trunk were admitted as evidence. The informant was not called.

In reversing the trial court's denial of disclosure, the Supreme Court emphasized that the informant was the only person with material information of the key evidence admitted against the defendant. And although the defense may not have actually called the informant to testify, that was for the defendant to decide.

In the case presently before us, there is no evidence to suggest that the informant was the only percipient witness to any critical event, *United States v. Long,* 533 F.2d 505, 508 (9th Cir.), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976), as in *Roviaro.* The informant's testimony would either have been cumulative or insignificant. Furthermore, the government largely avoided reference to the informant's activities throughout its case, relying instead on evidence relating to the defendants' activities at the Kuala Lumpur airport and in Los Angeles and New York, where the DEA had agents engaged in surveillance of the defendants.

■ Assuming, for argument, that the defendants made the required threshold showing as to the proffered defenses to justify consideration of disclosure, we conclude that the informant's testimony would not have been "relevant and helpful," *Rovario,* 353 U.S. at 60, 77 S.Ct. at 627, to the defense. With respect to the defense of lack of knowledge, the informant's interview indicates that, to the extent the informant's testimony would not have been cumulative of other evidence, any assistance provided to the defense would not have been significant, and at any rate the vast bulk of the testimony would have been unfavorable to the defense. In fact, the defendants were able to introduce significant evidence to support several of the claims for which they claim they needed the informant's testimony.

The informant's testimony would have been even less helpful to the proffered defense of entrapment. Absolutely nothing in the informant's interview indicates that his testimony would tend to establish that government agents induced the defen-

dants to participate in the importation of heroin. There is no suggestion that any governmental agent was "responsible for ... conduct which implants a criminal disposition." *United States v. Goodacre*, 793 F.2d 1124, 1125 (9th Cir.), *cert. denied*, 479 U.S. 993, 107 S.Ct. 595, 93 L.Ed.2d 595 (1986). Furthermore, nothing in the informant's testimony would indicate that the defendants were not predisposed to commit the offenses charged in this case. *Id.* (no entrapment defense if defendants were predisposed to commit the crime).

Similarly, there is nothing in the informant's interview that suggests "outrageous government conduct." There is no indication that government agents manufactured the crime or that the crime was generated "merely for the sake of pressing criminal charges against the defendant[s]." *United States v. Ramirez*, 710 F.2d 535, 540 (9th Cir.1983).

Comparing the government's strong interest in protecting the valuable resources of the informant in drug investigations with the limited benefit that would accrue to the defendants' defense satisfies us that the trial court's denial of disclosure was not an abuse of discretion.

### B. *Malaysian Police Reports*

■ Defendants contend that the district court erred by not dismissing the indictment after Deputy Superintendent Choo, the RMP contact, made Malaysian police reports unavailable by returning them to the Malaysian consulate during the trial. The district court determined that disclosure of the reports would not have been required. Fed.R.Evid. 612 provides that an adverse party is entitled to inspect a writing that a witness uses "to refresh memory for the purpose of testifying, either—(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice." The police reports were used by Choo before testifying. We therefore review for abuse of discretion the court's decision that disclosure was not necessary. The court did not abuse its discretion. First, the reports were littered with information about the

confidential informant. Second, the Malaysian official would likely have violated Malaysian law by turning over the reports. The court acted within its discretion in determining that disclosure was not "necessary in the interests of justice."

### C. *The Jury Instructions*

■ Choo admitted to lying under oath about the manner in which he had returned the Malaysian police reports to the Malaysian consulate. The defense requested a jury instruction that the "testimony of an admitted perjurer should always be considered with caution and weighed with great care." The trial court declined to give the instruction, stating that the subject was adequately covered by other instructions.

We evaluate the district court's jury instructions by considering the instructions as a whole in the context of the entire trial. *United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir.), *cert. denied*, 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986). We review the district court's wording and formulation of instructions for abuse of discretion. *Id.*

The failure to give a perjury instruction is not reversible where the other instructions given by the trial court "adequately cautioned the jury that the credibility [of the perjurer] is open to question." *United States v. Tamura*, 694 F.2d 591, 602 (9th Cir.1982). The trial court gave general instructions as to witness credibility and impeachment. The defense was allowed to point out Choo's perjury to the jury. The trial court's instructions as a whole adequately informed the jury of the need to be cautious in evaluating Choo's credibility. The district court did not abuse its discretion by refusing to give a specific instruction regarding perjurer testimony.

### D. *Sufficiency of the Evidence*

■ Wong, Sui Chan, and Ip contend that the evidence was insufficient to support their convictions. We must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

The only element of the offenses that merits discussion is knowledge or intent. A rational jury could have determined beyond a reasonable doubt that the defendants knew the suitcases contained heroin. The jury considered evidence that Ip, Wong, and Sui Chan had met and traveled together in Malaysia. Wong and Chan each arrived in Los Angeles with a false-sided suitcase containing four pounds of heroin. Ip arrived at the Los Angeles airport in a rental car with a copy of Wong's and Chan's itinerary and watched the two, but never spoke to them. Ip surreptitiously signaled Wong and Chan. Instead of riding in Ip's rental car, Wong and Chan got on a tour bus. Ip returned the rental car after less than thirteen miles of use. When they arrived at their hotel, Wong and Chan immediately canceled their reservations. Ip met them at the hotel in a taxi, and Wong and Chan were going to Ip's taxi, suitcases in hand, when they were arrested. A rational jury could reasonably infer from this evidence that Ip, Wong, and Chan knew that they were importing large amounts of heroin.

### E.  *Special Assessments*

Finally, we note that a $150 assessment was levied against each defendant under 18 U.S.C. § 3013. We have recently held this statute unconstitutional. *See United States v. Munzoz–Flores,* 863 F.2d 654 (9th Cir.1988). We, therefore, vacate the assessments.

AFFIRMED.