945 F.2d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Claudio Roger MARTINEZ, Flor Mary Restrepo, Olga Naranjo
Garcia, Luz Marina Restrepo, Juan Casanova, Carlos Alberto
Montoya, Janeth Naranjo Garcia, Faber Antonio Restrepo, and
Luis Fernando Monsalve, Defendants-Appellants.
 Nos. 89-50529, 89-50535, 89-50536, 89-50537, 89-50538,
89-50540, 89-50541, 89-50542 and 89-50543.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 2, 1991.
Decided Oct. 1, 1991.
 
 Before BOOCHEVER, KOZINSKI and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Claudio Roger Martinez, Flor Mary Restrepo, Olga Naranjo Garcia, Luz Marina Restrepo, Juan Casanova, Carlos Alberto Montoya, Janeth Naranjo Garcia, Faber Antonio Restrepo, and Luis Fernando Monsalve were convicted of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and possession with intent to distribute 430 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Janeth, Olga, Carlos, Faber, Flor and Luz (we refer to all of the appellants by their first names as some of them have the same last name) were convicted of possession with intent to distribute an additional 100 kilograms of cocaine, and Flor was convicted of using a minor to assist in the commission of drug offenses, in violation of 21 U.S.C. § 845(b) (now 21 U.S.C. § 861). They all appeal their convictions raising a myriad of issues.[1] We affirm.
 
 DISCUSSION
 1. Sufficiency of the Evidence
 
 3
 In reviewing the sufficiency of the evidence, we must determine whether a reasonable jury, after viewing the facts in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt. United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 110 S.Ct. 179 (1989). In February 1989, an informant's tip led police first to an Encino employment agency, then to an East Palm address in Burbank where the officers initially focused on the suspicious activities of Faber and Carlos. Specifically, they were observed engaging in counter-surveillance driving, securing vehicles later used in car switches, and making "beeper calls." Continued surveillance led police to observe Flor and Luz, then Claudio, and finally Janeth and Olga engaging in similar behavior.
 
 
 4
 On April 10, Faber and Carlos drove separate cars in tandem to several pay phones where they made calls. At their second stop, Flor, Luz, and a minor (the minor who was the object of Flor's conviction) drove up, talked with Faber and Carlos, and drove off in a counter-surveillance manner. Luz used a cellular phone while Flor drove. Flor then dropped Luz off at a house located on Marseille Street, and Flor and the minor continued driving around, stopping twice so the minor could make calls from pay phones.
 
 
 5
 Flor and the minor then drove down an alley where they met Claudio who was driving a car which the police previously had seen Carlos and Faber using. Claudio then drove to the Marseille house, while Flor drove through a grocery store parking lot.
 
 
 6
 Meanwhile, Claudio walked into the Marseille house, passing Luz on her way out. Flor then picked Luz up on a street away from the house. Claudio drove a van out of the garage to the same grocery store parking lot. While Claudio got out of the van and walked about twenty feet from it to give the van keys to Juan, who in turn gave the keys to Luis, a police officer walked by the van and observed multi-colored packages of what he recognized as kilogram quantities of cocaine behind the driver's seat. The officer then gave the arrest signal. Claudio had already begun heading down the street when he was arrested, Juan sat in the pick-up truck he and Luis had driven to the parking lot, (among other things, a cellular phone was recovered from the truck) and Luis was preparing to start the van.
 
 
 7
 Police subsequently found 430 kilograms of cocaine in the van, some in a plastic bag, and the rest in boxes. Police returned to the Marseille house after the arrests, where they observed Janeth and Olga. Janeth was arrested after she drove up to the house, walked in, left and started driving away. Olga was arrested as she was leaving the house. She carried the same bag containing a cellular phone which police had seen Flor carrying earlier. The bag also contained among other things a rent receipt issued to Janeth and Olga for the Marseille house.
 
 
 8
 Later that day, police arrested Flor, Luz and Carlos at an address which was written on an envelope which the police subsequently found in the van. Even later, police found an additional 100 kilograms of cocaine at the Prince Circle address. The next day, police arrested Faber at the East Palm address.
 
 
 9
 a. Conspiracy
 
 
 10
 The elements of conspiracy are (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive act. United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990). Once the existence of a conspiracy is established, evidence of only a slight connection is necessary to support a conviction of knowing participation in that conspiracy. Id. More than sufficient evidence supports the conspiracy convictions of all of the appellants.
 
 
 11
 The jury could reasonably infer an agreement to possess and distribute cocaine from the attempted exchange of the large quantity of cocaine. The attempted exchange also constituted the requisite overt act. Appellants' sufficiency argument focuses on the third element, the requisite intent. In this case, the requisite mental state is intent or knowledge. 21 U.S.C. § 841(a) (1988). Claudio, Juan and Luis' claim that a reasonable jury could not find that they did not know the van contained cocaine is meritless. The jury could reasonably infer, based on the value and quantity of the cocaine, that the three men knew the van was filled with cocaine and that they intended to distribute it. See United States v. Meyers, 847 F.2d 1408, 1414 (9th Cir.1988); cf. United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir.1989) (price and quantity of cocaine highly relevant to establish appellants' knowledge of cocaine in car and intent to distribute cocaine).
 
 
 12
 Similarly, the jury could reasonably infer that Faber, Carlos, Flor and Luz were knowing participants in the conspiracy, based on these appellants' activities leading up to the April 10 drug exchange. They essentially claim that there was no link between the counter-surveillance activity and the ultimate possession of drugs in the van. The bulk of their argument is factual, and we must view the evidence in the light most favorable to the government. Although the jury could have drawn favorable inferences from the evidence, the jury chose not to do so. The evidence from which it drew the ultimate inference that Faber, Carlos, Flor and Luz were participating in the drug conspiracy included (1) counter-surveillance driving, (2) car switches, (3) telephone records of calls between the various vehicles, (4) Flor's interaction with Claudio the day of the bust, (5) Luz's entry into the Marseille house the day of the bust, (6) interaction with Janeth and Olga, the listed tenants of the house in which the cocaine was stored, (7) cash purchases of cars, (8) registration of cars to false names and addresses, and (9) paper found in the van with some of their names on it. This evidence was sufficient to persuade a jury beyond a reasonable doubt that Faber, Carlos, Flor and Luz had at least a slight connection to the conspiracy. Cf. United States v. Sai Keung Wong, 886 F.2d 252, 254, 257-58 (9th Cir.1989) (evidence was sufficient to support convictions of conspiracy, possession, and importation of heroin despite little direct communication among some defendants). Likewise, as for Janeth and Olga, among other evidence, they rented the two houses in which cocaine was stored, they were present at one of the houses after Claudio, Juan and Luis were arrested, and they had been seen engaging in the counter-surveillance driving with Claudio. This evidence was sufficient to persuade a jury beyond a reasonable doubt that they had at least a slight connection to the conspiracy.
 
 
 13
 b. Possession
 
 
 14
 Once there is sufficient evidence of knowing participation in a conspiracy, defendants are responsible for the substantive offenses committed by their co-conspirators in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-47 (1946). Thus, the appellants were criminally responsible for possessing the cocaine found in the van. Similarly, Flor, Luz, Faber, Carlos, Claudio, Janeth and Olga were criminally responsible for possessing the cocaine found in the Prince Circle house.
 
 
 15
 c. Use of a Minor
 
 
 16
 Flor challenges her conviction for using a minor in a drug offense claiming that there was no evidence of the minor's age. Her challenge fails because the government introduced the minor's driver's license and passport indicating that she was seventeen years old at the time of the offense.
 
 2. The Van Search
 
 17
 Appellants argue that a sophisticated drug distribution organization would not leave cocaine kilos in plain view in the compartment of a van. They claim that all of the cocaine was in closed boxes. Officer Ray Phillips testified that some of the cocaine was in plain view. We do not find clearly erroneous the district court's acceptance of the police officer's testimony in denying the suppression motion.
 
 
 18
 Appellants further challenge the search of the closed boxes which were shielding some of the cocaine from plain view. Assuming that at least Luis has standing to challenge the search, the police were authorized to conduct a warrantless search "of compartments and containers within the vehicle whose contents [were] not in plain view[,]" United States v. Ross, 456 U.S. 798, 800 (1982), because they had probable cause to believe that cocaine was in the van. See id. at 823-24; see also California v. Acevedo, 111 S.Ct. 1982, 1991 (1991) (police may search an automobile and the containers within it if they have probably cause to believe contraband is contained). Thus, we hold that the 430 kilograms of cocaine were properly admitted at trial.
 
 3. Claudio's Post-Arrest Statements
 
 19
 Claudio argues that he was not advised of his Miranda rights prior to making several post-arrest statements. An officer testified that he read Claudio his rights and that Claudio waived them. We do not find clearly erroneous the district court's decision to believe the officer even though the waiver was not recorded. Thus, the statements were properly admitted.
 
 4. Janeth's and Olga's Arrests
 
 20
 Janeth and Olga argue that evidence seized during the searches of their persons incident to arrest should have been suppressed because the police did not have probable cause to arrest them. They argue that mere proximity to the house from which the cocaine-laden van departed did not give rise to probable cause. We disagree.
 
 
 21
 Although it is disputed whether Janeth and Olga were present in the house contemporaneously with the drug seizure, we can conclude at the very least that they were there shortly after the seizure. The officer assessing whether there was probable cause to arrest knew that earlier in the three-month surveillance, Janeth and Olga had been seen driving in a car with Claudio executing counter-surveillance maneuvers.[2] The officers, therefore, could reasonably conclude that the women's presence in the house so soon after the seizure gave rise to probable cause because the drug enterprise being carried out was of the type that could not be carried out without the knowledge of all persons present in the house. See United States v. Hillison, 733 F.2d 692, 697-98 (9th Cir.1984). Such evidence was sufficient to support the officer's conclusion that there was probable cause to arrest. We conclude that the incriminating material seized from their persons during the searches incident to arrest was properly admitted.
 
 
 22
 5. The Marseille House and Prince Circle House Entries
 
 
 23
 Janeth and Olga assert that the entries into the Marseille and Prince Circle houses prior to the issuance of the search warrant were illegal. We need not decide this issue because any evidence obtained as a result of the entries would have been inevitably discovered pursuant to lawful means, namely, the search warrant of April 11, 1989. See Murray v. United States, 487 U.S. 533, 539 (1988); Nix v. Williams, 467 U.S. 431, 444 (1984). The search warrant ultimately issued was lawful because it was based on probable cause independent of the alleged illegal entries. We therefore find that the evidence seized from Prince Circle, including the additional 100 kilograms of cocaine, was properly admitted, as was the evidence that the Marseille house was virtually empty.
 
 6. Ineffective Assistance of Counsel
 
 24
 Janeth and Olga claim that their trial attorney did not adequately present the motions to suppress because the attorney failed to demand an evidentiary hearing. Moreover, they assert that the motions did not comport with a local rule requiring that declarations of parties competent to testify be attached. We find that they have not satisfied their burden of proving ineffective assistance.[3]
 
 
 25
 Usually ineffective assistance claims are raised collaterally so as to allow the district court the first opportunity to consider them and, if necessary, to develop a record. United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991). However, the record is sufficiently clear for us to conclude that the claim is meritless.
 
 
 26
 To prove ineffective assistance of counsel, Janeth and Olga must show "material, specific errors and omissions that fall outside the 'wide range of professionally competent assistance.' " Id. at 1447 (quoting Strickland v. Washington, 466 U.S. 668, 690 (1984)). In addition, they must show prejudice, i.e., but for the attorney's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Id. We need not linger on the first question of whether the attorney's failure to request an evidentiary hearing and to file a different declaration were errors falling outside the range of competent assistance, because the conduct clearly produced no prejudice. As discussed earlier, the evidence seized from Janeth's and Olga's persons and houses was properly admitted, and thus their attorney could not have done anything differently which would have prevented the admission of evidence.
 
 7. Confidential Informant
 
 27
 Janeth and Olga assert that the district court should have compelled disclosure of the identity of the informant whose tip sparked the surveillance. They maintain that the informant would have exculpated them. The informant's tip, however, was not used to establish guilt at trial, but instead was relied upon only to begin surveillance. Because Janeth's and Olga's guilt was established by the investigation of events occurring subsequent to and independent of the informant's tip, the appellants failed to carry their burden of proving that disclosure of the informant's identity was " 'relevant and helpful to the[ir] defense ... or ... essential to a fair determination....' " United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990) (quoting Roviaro v. United States, 353 U.S. 53, 60-61 (1957)). Moreover, even if the informant had testified that he or she was not aware of Janeth's and Olga's involvement in the drug-related activities, the effect of such testimony would have been minimal at best in light of other evidence of guilt. See Sai Keung Wong, 886 F.2d at 256. We, therefore, find that the district court did not abuse its discretion in refusing both to compel disclosure and to hold an in camera hearing. See United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir.1989), cert. denied, 110 S.Ct. 1830 (1990).
 
 8. Severance Motion
 
 28
 Appellants argue that the district court erred in denying their severance motion made pursuant to Fed.R.Crim.P. 14. We find that they waived their right to appeal this denial as they did not renew it after the close of the government's case. Sanchez-Lopez, 879 F.2d at 551.
 
 9. Closing Argument
 
 29
 Appellants claim that the prosecution made improper rebuttal statements during closing argument. Notwithstanding that it appears that the statements were appropriately made in response to points made by the appellants' attorneys, the overwhelming evidence of guilt made any such error harmless beyond a reasonable doubt. See United States v. Crespo de Lllano, 830 F.2d 1532, 1545 (9th Cir.1987), amd'd on denial of reh'g, 838 F.2d 1006 (9th Cir.1988).
 
 10. Jury Instructions
 
 30
 a. Conspirator Liability
 
 
 31
 Appellants argue that the court delivered a Pinkerton instruction which did not advise the jury that it must find that the appellants reasonably foresaw that the substantive crimes might be committed by their co-conspirators to be liable for those substantive crimes. Foreseeability was not at issue here as the substantive crimes were the same as the object of the conspiracy. Moreover, the instruction given has been deemed a valid Pinkerton instruction by this court. See, e.g., United States v. Vasquez, 858 F.2d 1387, 1393 & n. 3 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989), 489 U.S. 1029 (1989).
 
 
 32
 Appellants also challenge the instruction given that "[o]ne who willfully joins an existing conspiracy is charged with the same responsibility as if he or she had been one of the originators or instigators of the conspiracy. Further, a conspirator who joins a preexisting conspiracy is bound by all that has gone on before in the conspiracy." They claim that this instruction made it appear as if appellants could be found liable for the substantive offenses of their co-conspirators committed before the appellants joined the conspiracy. This challenge fails as the same instruction also informed the jurors that an appellant "cannot be bound by the acts and declarations of other participants until it is established that a conspiracy existed and that he or she was one of its members." See RT 1907. Viewing the instruction as a whole, the instruction indicates that the challenged language was limited specifically to conspiracy liability.
 
 
 33
 b. Reasonable Doubt
 
 
 34
 Appellants request a new trial based on the court's use of the "willingness to act" formulation of reasonable doubt as opposed to the preferred "hesitation to act" instruction. Although the "hesitation" language is preferred, use of the "willingness" language does not constitute reversible error. United States v. Robinson, 546 F.2d 309, 313-14 (9th Cir.1976), cert. denied, 430 U.S. 918 (1977). Instead, appellants must show prejudice, id., which they have not done. The appellants' related contention that the instruction was grammatically incomplete also fails. The instruction, "taken as a whole, fairly and accurately convey[ed] the meaning of reasonable doubt...." Id. at 314.
 
 CONCLUSION
 
 35
 Sufficient evidence supported appellants' convictions. We find no reversible error. Thus, the convictions of appellants are
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants also appeal their sentences which we address in a separate published opinion
 
 
 [2]
 Although at least once in their brief, Janeth and Olga assert that only Janeth was seen in the car with Claudio, trial testimony indicates otherwise. See RT 820. As noted earlier, we must view the evidence in the light most favorable to the government
 
 
 [3]
 Janeth and Olga's statement that the court failed to make "any findings of fact and conclusions of law as it was required to do by Fed.R.Crim.P. 12(e) and (g)," see Appellants' Reply Br. 7, although made in the ineffective assistance section of their reply brief, is really a separate issue. Because, however, it is mentioned for the first time in their reply brief and is not adequately developed, it is deemed abandoned