990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luciano RAMIREZ, Defendant-Appellant.
 No. 91-50533.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1992.
Decided April 7, 1993.
 
 Before WALLACE, Chief Judge, and TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Luciano Ramirez appeals his conviction for conspiracy, in violation of 21 U.S.C. § 846, possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Ramirez alleges the district court committed several errors requiring reversal. We vacate Ramirez's conviction and remand to the district court for an in camera determination of whether the government must disclose the identity of the confidential informant who may have been a percipient witness to the drug transaction of which Ramirez stood accused.
 
 
 3
 * SUFFICIENCY OF THE EVIDENCE
 
 
 4
 Ramirez appeals the district court's denial of his Rule 29 motion to dismiss for insufficient evidence. This motion was made both at the conclusion of the government's case and at the conclusion of the trial.
 
 
 5
 There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). "Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy." United States v. Lopez, 625 F.2d 889, 895 (9th Cir.1980) (quoting United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977)).
 
 
 6
 The evidence was sufficient to convict Ramirez of conspiracy, cocaine distribution, and carrying a firearm during a drug trafficking offense. The police search of Ramirez's home revealed a substantial amount of drugs, trafficking paraphernalia, and two handguns. In addition, the officers discovered an incriminating photograph of Ramirez brandishing a rifle and standing over a marijuana plant. A car parked outside the home contained even more drugs. Ramirez himself admitted to police that he knew a cocaine transaction was occurring in his living room. This evidence indicates Ramirez was more than "merely present" during the cocaine transaction and is sufficient to prove he was knowingly involved in cocaine possession and the conspiracy to distribute it.
 
 
 7
 Ramirez was present at the drug exchange and had a cocked and loaded pistol in his trousers. The fact that a weapon was available during a drug transaction is sufficient to support a conviction under 18 U.S.C. § 924, even if the weapon was never openly displayed or brandished. United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985); United States v. Torres-Medina, 935 F.2d 1047, 1049 (9th Cir.1991). The mere fact that firearms were placed in the bedroom containing the cocaine would have been sufficient to indicate a violation of § 924(c). United States v. Martinez, 967 F.2d 1343, 1346 (9th Cir.1992).
 
 
 8
 Ramirez's testimony after the first Rule 29 motion was denied did not lessen the weight of this adverse evidence. If anything, his implausible testimony increased the sufficiency of the evidence against him. He testified he had placed the gun in his waistband to keep it from his children but offered no explanation as to why the gun was cocked. Although on a limited income, he testified he paid $18 a month for a beeper that he had for "No special reason.... Hardly anybody ever called me." He claimed to have found the triple beam scale, commonly used in drug trafficking, in the garage and had brought it into his home but had never used it for anything.
 
 
 9
 The jury did not consider this testimony to be plausible. "When the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth." United States v. Kenny, 645 F.2d 1323, 1346 (9th Cir.), cert. denied, 452 U.S. 920 (1981). The evidence at the conclusion of the trial was even stronger than at the conclusion of the government's case. The evidence was more than sufficient to convict.
 
 II
 KNOCK-NOTICE
 
 10
 Ramirez claims the district court erred by denying his motion to suppress because he claims the officers entered his home in violation of 18 U.S.C. § 3109, the federal "knock-notice" statute. This statute requires that federal officers, before opening a door of a house to enter to serve a warrant, must give notice of their identity and purpose and be refused admittance by the occupant. The district court's finding of fact whether such an announcement was made is reviewed for clear error.
 
 
 11
 Ramirez bases his argument on the fact the agents omitted any mention of knocking before entry in the initial report filed immediately after the drug raid. In a "corrected" report filed one month later, however, the agent stated the officers had knocked and announced their presence before entering. In addition, the court received a sworn declaration from another officer present at the scene that the "knock-notice" statute was complied with. After reviewing this information, the court found "that the officer [sic] did knock and announce their presence and then entered the house." This determination was not clearly erroneous.
 
 
 12
 After knocking and announcing their presence, the officers were able to enter the house immediately without waiting for a reply under the "exigent circumstance" exception to the statute. United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984); United States v. Whitney, 633 F.2d 902, 908 (9th Cir.1980), cert. denied, 450 U.S. 1004 (1981). Exigent circumstances are those which "would cause a reasonable person to believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." McConney, 728 F.2d at 1199.
 
 
 13
 The agents testified that as they approached the open front door, they observed one of the defendants running toward the rear door of the house. They believed there was a risk that individual was attempting to destroy evidence or retrieve a weapon. In fact he did attempt to conceal keys to the drug laden automobile parked in the driveway. See United States v. Kovac, 795 F.2d 1509, 1513 (9th Cir.1986) (officers observing defendant moving away from unlocked front door supports finding of mild exigency), cert. denied, 479 U.S. 1065 (1987).
 
 
 14
 The court has also lessened the exigency requirements and allowed simultaneous announcement and entry when "entry can be accomplished without physical destruction of property.... [H]ere the officers found an open door." McConney, 728 F.2d at 1206. Likewise, the agents who raided Ramirez's home stated the front door was completely open at the time of their approach.
 
 
 15
 18 U.S.C. § 3109 was not violated because the district court determined the officers did knock and announce their presence. The exigent circumstances justified their rapid entry through Ramirez's open front door to prevent the concealment of evidence and the apparent flight of one of the occupants.
 
 III
 IMPEACHMENT PHOTOGRAPHS
 
 16
 Appellant maintains the district court erred when it admitted into evidence two photographs, which depict Ramirez standing over a marijuana plant brandishing a rifle. He argues this evidence should have been excluded under Fed.R.Evid. 403 because its prejudicial effect outweighed its probative value. "We review the district court's decisions balancing the probative value of evidence against its prejudicial effect for abuse of discretion." United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989).
 
 
 17
 The district court initially granted the exclusion in a pretrial motion but stated that such exclusion applied only to the government's case-in-chief. After Ramirez testified the following day, the court concluded the photographs were then relevant and admitted them into evidence. This decision was not an abuse of discretion.
 
 
 18
 The photographs were admitted to impeach the testimony Ramirez had given concerning his possession of various firearms. On direct examination Ramirez claimed ownership of only two handguns. He also stated the only reason he was carrying a weapon during the drug transaction was to keep that weapon away from his children. Once that testimony was given and the issue of Ramirez's ownership and utilization of firearms was raised, the court did not abuse its discretion in admitting a photograph depicting Ramirez brandishing other weapons. The government did not actually use that evidence on cross-examination until Ramirez denied handling other firearms:
 
 
 19
 [THE GOVERNMENT]: Mr. Ramirez, isn't it true that you oftentimes handled other firearms?
 
 
 20
 RAMIREZ: I only had but two small handguns.
 
 
 21
 The photograph was thus properly admitted to impeach Ramirez's testimony.
 
 
 22
 The prejudicial effect of the photograph did not outweigh its probative value. Had Ramirez denied any involvement with marijuana, that might not be the case. However, in statements to police and during direct examination Ramirez admitted possessing the fourteen pounds of marijuana found in one of the bedrooms of his home. Thus the presence of a marijuana plant in the picture was not unduly prejudicial and did not outweigh the probative value of a photograph indicating, contrary to his testimony, that Ramirez had handled other firearms.
 
 
 23
 Appellant argues the district court erred because it gave no limiting instruction as to the specific purpose for which the jury was to consider the photographs. However, Ramirez requested no limiting instruction at trial and the judge is not required to give one sua sponte. United States v. Harris, 738 F.2d 1068, 1073 (9th Cir.1984); United States v. Palmer, 691 F.2d 921, 923 (9th Cir.1982). Moreover, a failure to give a sua sponte limiting instruction is generally not reversible error. Id.
 
 
 24
 The court did not abuse its discretion in admitting the photographs into evidence for impeachment purposes.
 
 IV
 ADMISSABILITY OF LOPEZ'S STATEMENTS
 
 25
 Ramirez next contends the district court erred in excluding a statement made by codefendant Oscar Lopez, which would have supported Ramirez's assertions concerning the ownership of the cocaine. Fed.R.Evid. 804(b)(3) provides an exception to the hearsay exclusion if (1) the declarant is unavailable as a witness and (2) the statement is made against interest. An individual is "unavailable" if he refuses to testify under the Fifth Amendment privilege against self-incrimination. Fed.R.Evid. 804(a)(1); United States v. Holland, 880 F.2d 1091, 1093 (9th Cir.1989).
 
 
 26
 Ramirez contends that because Lopez had not yet been sentenced, he had a Fifth Amendment right to refuse to testify, and thus would be considered unavailable for trial under Fed.R.Evid. 804(a)(1). However, such conjecture is insufficient to apply the Rule. The language of the Rule indicates a ruling of the court is necessary: " 'Unavailability as a witness' includes situations in which the declarant--(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." Fed.R.Evid. 804(a)(1). According to the 1972 Advisory Committee notes: "A ruling by the judge is required, which clearly implies that an actual claim of privilege must be made."
 
 
 27
 The district court made no such ruling because Lopez never invoked his Fifth Amendment privilege. Ramirez argues the privilege was invoked by Lopez's attorney. Even if the privilege can be invoked by the declarant's attorney, see, e.g., United States v. Brainard, 690 F.2d 1117, 1123 (4th Cir.1982); United States v. Williams, 927 F.2d 95, 98-99 (2nd Cir.), cert. denied, 112 S.Ct. 307 (1991), Lopez's attorney made no such request. The following exchange occurred between the court and Mr. Klein, Lopez's attorney, concerning the admission of the incriminating statements:
 
 
 28
 THE COURT: Mr. Klein, do you want the statement in?
 
 
 29
 MR. KLEIN: No, Your Honor. We are going to apply for conditional plea and we intend to enter that plea at the conclusion of this motion in limine when the court has a chance to hear us.
 
 
 30
 THE COURT: All right. If that is the fact that becomes hearsay, counsel.
 
 
 31
 Although it may be unclear from this exchange on what basis the court determined the statements were hearsay, it is clear that Lopez's attorney did not invoke the Fifth Amendment, nor was there any ruling of the court to that effect. The court also asked codefendant Rubio's attorney if he opposed the motion to admit the statement, which indicates the court was not inquiring whether Fifth Amendment privileges were being invoked, as Rubio could not possibly claim such a privilege regarding statements made by another.
 
 
 32
 Because neither Lopez nor his attorney asserted a Fifth Amendment right and the court thus made no ruling, Lopez was not "unavailable" as a witness and the district court properly excluded his statements as inadmissable hearsay. Because Ramirez's argument fails under the first requirement of the hearsay exception, we need not consider whether Lopez's statements were made against interest.
 
 V
 MERE PRESENCE
 
 33
 Ramirez further contends the district court erred when it refused his proposed jury instruction concerning his "mere presence" defense. The district judge determined the proposed instruction was unnecessary and cumulative and instead instructed the jury as follows:
 
 
 34
 Mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.
 
 
 35
 The court also gave an instruction regarding the cocaine possession count. The court stated that a person is in possession if he "knowingly has direct physical control ... or knowingly has both the power and the intention at a given time to exercise dominion or control over a thing either directly or through another person...."
 
 
 36
 "A defendant is entitled to a jury instruction on a theory of defense if the theory has a basis in law and in the record." United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir.1987), cert. denied, 484 U.S. 1046 (1988). However, a "defendant is not entitled to any particular form of an instruction so long as the instructions given fairly and adequately cover the defendant's theories of defense." Id. "[A] defendant is not entitled to a mere presence instruction of his own phrasing." United States v. Ferris, 719 F.2d 1405, 1408 (9th Cir.1983).
 
 
 37
 The instructions given by the district court adequately cover the defendant's theory of defense. The instruction concerning conspiracy states that the fact the defendant associated and conversed with the other defendants does not necessarily indicate proof of conspiracy. That instruction adequately informs the jury that "mere presence" is insufficient to convict for conspiracy. The instructions concerning possession required the jury to find that the defendant exercised control over the cocaine. The more stringent actual or constructive possession effectively precluded conviction for mere presence or proximity.
 
 
 38
 Appellant's extensive reliance on United States v. Sotello-Murillo, 887 F.2d 176 (9th Cir.1989), is misguided. The issue in that case was the district court's determination that the requested defense instruction was not warranted on the basis of the evidence presented. Id. at 179. The district court had failed to give the jury any instructions which covered the defendant's theory of the case. In contrast, the issue at bar is not whether there was sufficient evidence to warrant a requested instruction, but whether the other instructions given were sufficient. We conclude that they were.
 
 
 39
 Ramirez submitted an additional citation, United States v. Negrete-Gonzales, 966 F.2d 1277 (9th Cir.1992), to support his argument. In Negrete-Gonzales, we noted that the defendant was entitled to a mere presence instruction concerning his presence in the house in which the drug transaction occurred. Id. at 1282. However, the court observed: "If the government's case is based on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime, then a 'mere presence' instruction is unnecessary." Id.
 
 
 40
 Negrete-Gonzales is inapposite because in this case the government relied on more than Ramirez's "mere presence" at the scene of the crime. In contrast to the defendant in Negrete-Gonzales, Ramirez owned the house in which the transaction occurred and in which large quantities of drugs and two firearms were discovered. At least one circuit has refused on that basis alone to give a "mere presence" instruction: "The dominion and control associated with owning and living in a small, open house ... is utterly inconsistent with the legal conclusion that [the defendant] was 'merely present' in a house full of guns and drugs in its common areas...." United States v. McKnight, 953 F.2d 898, 903 (5th Cir.), cert. denied, 112 S.Ct. 2975 (1992). Moreover, Ramirez was also carrying a pager and had a cocked pistol in the waistband of his trousers and his explanation of events at trial was implausible.
 
 
 41
 The district court's other instructions effectively precluded conviction based on mere proximity and thus the failure to give a "mere presence" instruction of Ramirez's own choosing was not reversible error.
 
 VI
 CONFIDENTIAL INFORMANT
 
 42
 Ramirez's final argument is that the district court erred in not granting his motion for disclosure of the identity of the government informant, who was present during the drug transaction immediately preceding Ramirez's arrest. The court also prevented Ramirez's counsel from bringing up the informant during cross-examination. Ramirez argues the informant was a percipient witness whose testimony might have been helpful in his defense. Ramirez had denied involvement in the cocaine transaction in his home and maintained the informant, who was present at the deal, could have testified Ramirez played no role and was not even present when the transactors retired to the bedroom to engage in business. We review the trial court's decision concerning disclosure of the identity of a confidential informant for abuse of discretion, United States v. Gonzalo Beltran, 915 F.2d 487, 488 (9th Cir.1990).
 
 
 43
 The government has a limited privilege to withhold the identity of confidential informants. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro v. United States, 353 U.S. 53, 60-61 (1957). The Supreme Court did not establish a "fixed rule", but rather one that "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. To effectuate this balancing test, the court must look at three factors: 1) the degree of the informant's involvement in the crime; 2) the relationship between the defendant's asserted defense and the informant's likely testimony; and 3) the governmental interests in nondisclosure. Gonzalo Beltran, 915 F.2d at 489.
 
 
 44
 The district court did not explicitly apply this balancing test, nor did it make specific findings. It is not clear from the record on what grounds the court based its decision to deny appellant's motion to compel disclosure. The district court stated that because the government did not intend to call the informant as a witness, his identity was "irrelevant." The court also seemed to indicate its decision was based on the fact that Ramirez knew who the informant was and thus disclosure was unnecessary: "It is irrelevant then. And your client knows who the informant was because he has been identified as being there at the time of his arrest." However, Ramirez testified at trial that he did not know the identity of the informant.
 
 
 45
 The informant appears to have had a high degree of involvement in the criminal activity which led to the search. Although the informant was not called as a witness by the government, he was mentioned in the conspiracy count in the indictment: "On or before April 8, 1991, defendant OSCAR LOPEZ discussed the sale of ten (10) kilograms of cocaine with a confidential informant (CI)." The indictment also charged Ramirez with providing security during the drug transaction with the informant. Thus the first factor of Gonzalo Beltran was met. Under the third factor, regarding the governmental interests in nondisclosure, the government did make a showing that disclosure would have been harmful to the informant's safety and could jeopardize ongoing and future investigations.
 
 
 46
 At the time the motion was filed, Ramirez did not show a specific relationship between his defense and the informant's likely testimony, as required by the second prong of Gonzalo Beltran. The defendant has the burden of proof to show the need for disclosure. "Mere suspicion" that the information will prove helpful is insufficient. United States v. Wong, 886 F.2d 252, 256 (9th Cir.1989). Although Ramirez did not put forth the specifics of his possible defense, he did state in his motion that the informant was a "percipient witness" who "played an integral role in the narcotics transaction" and whose "testimony may be helpful." Ramirez also stated that "he may wish after further investigation and interviews to call the informant as a witness."
 
 
 47
 Although Ramirez's memorandum in support of the motion was somewhat vague, it was not possible for him to know specifically what testimony the informant might provide as Ramirez did not have the opportunity to interview him. The fact the informant was a "percipient witness," and not merely a tipster who provided the basis for probable cause, weighs heavily in Ramirez's favor. This circuit has noted "the distinction that our decisions have drawn between those situations wherein an informant's role was merely peripheral, and, in contrast, those situations wherein the informant actually witnessed the crime, or, as here, even helped instigate the criminal transaction." United States v. Hernandez, 608 F.2d 741, 744 (9th Cir.1979) (citations omitted).
 
 
 48
 We determine Ramirez made at least the threshold showing under Gonzalo Beltran to require an in camera interview of the informant by the district court. Without an in camera interview having been conducted, it is impossible to determine whether the informant would have been able to testify what role Ramirez played in the cocaine transaction that was the subject of the indictment. This circuit has encouraged such use of in camera hearings where the government opposed disclosure of the informant's identity. United States v. Johns, 948 F.2d 599, 607 (9th Cir.1991) (citing United States v. Fixen, 780 F.2d 1434, 1439 (9th Cir.1986)), cert. denied, 112 S.Ct. 3046 (1992).
 
 
 49
 Because the informant's testimony may have been critical to Ramirez's defense, the district court erred in failing to conduct an in camera interview before denying defendant's motion for disclosure. We vacate Ramirez's conviction and remand this case to the district court with instructions to conduct such an interview with the informant. The in camera hearing shall be transcribed and its record sealed. Once the interview has been conducted, the court shall apply the Gonzalo Beltran balancing test and reach a specific determination of the necessity of informant disclosure. If the district court determines disclosure is unnecessary, the court may reinstate the judgment of conviction. United States v. Kiser, 716 F.2d 1268, 1274 (9th Cir.1983).
 
 
 50
 This panel retains appellate jurisdiction over this matter.
 
 
 51
 VACATED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3