19 F.3d 1442
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cesar VELANDIA, Defendant-Appellant.
 No. 92-50707.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 1, 1994.
Decided March 17, 1994.
As Amended on Denial of Rehearing
May 3, 1994.
 
 Before: BROWNING, BOOCHEVER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Cesar Velandia appeals his conviction of conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and aiding and abetting. Velandia worked with a confidential informant for the Drug Enforcement Administration to arrange a drug sale. He claims that the district court erred by refusing to compel the government to disclose the name and address of the confidential informant, by refusing to give an entrapment instruction, and by sentencing him without considering evidence of organic brain damage. We affirm.
 
 I. Identity of Confidential Informant
 
 3
 Before and during trial, Velandia moved several times for disclosure of the identity (name and address) of Gloria, the confidential informant, so that Velandia could investigate her to determine her credibility. The district court denied all these motions, although in the process it directed the government to file declarations (including one from Gloria herself) in camera and under seal, regarding Gloria's background and the reasons why she feared disclosure of her identity.
 
 
 4
 Gloria also appeared on the fourth day of trial before counsel and the district court but outside the presence of the jury, and stated that she was available as a witness but would not give her name and address, as she thought "it could be very dangerous to me in all counts." The district court noted that the defense's reasons for wanting Gloria's name were speculative (for example, to be able to interview her husband and son who "could have information about this case that could be helpful"), and refused to order disclosure. Velandia's counsel concluded that he would not call Gloria as a witness because her last name and address had not been disclosed.
 
 
 5
 At the end of trial, the defense moved for a judgment of acquittal and to dismiss the indictment for violations of Velandia's fifth and sixth amendment rights arising out of the district court's refusal to compel disclosure of Gloria's identity, and for a judgment of acquittal.
 
 
 6
 This court reviews the trial court's decision whether to require the disclosure of the identity of an informant for an abuse of discretion. United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir.1989), cert. denied, 494 U.S. 1089 (1990). The burden is on the defendant to show the need for disclosure. United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990). Mere suspicion or speculation that the information will be helpful will not suffice. Id.
 
 
 7
 In making its determination, the trial court must "balanc[e] the public interest in protecting the flow of information [about criminal activity] against the individual's right to prepare his defense." Roviaro v. United States, 353 U.S. 53, 62 (1957). The government's limited privilege to withhold the information must give way "[w]here the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61. Where an informant is a principal witness, the informant's address "is an integral element of identity for without such information, little meaningful inquiry can be made into background information affecting credibility." United States v. Hernandez, 608 F.2d 741, 745 (9th Cir.1979).
 
 
 8
 In balancing the interests of society and the defendant, this court considers "(1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure." United States v. Gonzalo Beltran, 915 F.2d 487, 489 (9th Cir.1990) (per curiam).
 
 A. The degree of Gloria's involvement
 
 9
 Gloria's last involvement in the drug transaction was in mid-July, 1991. She thus was present at the first meeting between Velandia and Detective Reyes, and then she dropped out of sight. All the specific arrangements for the cocaine sale, including the transcontinental coordination of the exchange of money and drugs, were made without her participation.
 
 
 10
 Although she was instrumental in setting up the deal, there was "no evidence to suggest that the informant was the only percipient witness to any critical event," and her testimony regarding the meetings with the officers "would either have been cumulative or insignificant." United States v. Sai Keung Wong, 886 F.2d 252, 256 (9th Cir.1989). Cf. Roviaro, 353 U.S. at 61, 64 (where informer helps set up and is present at its occurrence, or is sole participant other than the accused in the charged offense, grounds for disclosure); United States v. Whitley, 734 F.2d 1129, 1138 (6th Cir.1984) (requiring disclosure of identity "when the informer was an eyewitness to, and in fact a participant in, the exchange of contraband by the defendant seller," but not when the informer "was not a participant in the drug transactions"). There is nothing to suggest that Gloria's name and address would have made her testimony more significant.
 
 
 11
 B. Relationship of testimony to Velandia's defense
 
 
 12
 Velandia argues that he needed Gloria's identity to establish his entrapment defense, discussed below. Velandia claims that if he had had her name and address, he could have checked further into her background, and perhaps found something that would strengthen the case that he was entrapped. This is pure speculation. Velandia failed to establish how Gloria's testimony, which was available to him, would have shown entrapment. He also failed to demonstrate how her name and address would help. "[N]othing in the informant's testimony would indicate that [Velandia was] not predisposed to commit the offenses charged in this case." Sai Keung Wong, 886 F.2d at 257. As the district court noted, Velandia had other avenues for impeaching Gloria through the officer witnesses.[1]
 
 C. Government's interest in nondisclosure
 
 13
 The government has a "strong interest in protecting the valuable resources of the informant in drug investigations." Id. "[I]nformers whose identities are revealed prior to trial are often 'among the missing' when the trial date finally arrives." Hernandez, 608 F.2d at 745 (quoting United States v. Pennick, 500 F.2d 184, 186 (10th Cir.), cert. denied, 419 U.S. 1051 (1974)).
 
 
 14
 Gloria stated in her declaration, filed in camera and under seal, that she feared for her safety and for that of her family. She gave specific reasons for her fears. The declaration is compelling, and shows a reasonable foundation for Gloria's fear of serious danger of harm if the government revealed her identity. The danger to Gloria if her identity were revealed was confirmed by a declaration from the Assistant United States Attorney. Finally, as the government points out, the district court carefully weighed the impact on Velandia's defense of not having Gloria's name and address, and concluded that it was possible for Velandia to use her testimony without that information. [GER 2 p. 370]
 
 
 15
 The procedure followed produced enough trustworthy evidence to allow us to decide that the district court did not abuse its discretion by failing to order disclosure of Gloria's identity. See United States v. Ordonez, 737 F.2d 793, 810 (9th Cir.1984). Velandia has not carried his burden to show specific reasons why Gloria's identity was crucial to her testimony.
 
 II. Entrapment Instruction
 
 16
 Velandia also argues that the district court erred in refusing to instruct the jury on the defense of entrapment. At trial, Velandia presented the testimony of his father, who stated that his son was "strapped into" the crime by federal agents [ER p. 121]; testimony that Gloria tried to locate drug dealers in the hope of benefitting her son in prison by cooperating with law enforcement officials [ER pp. 61-62]; Velandia's request for more time to complete the drug deal [ER p. 142]; a conversation about "pressure" [ER p. 133-35]; and the mention of other people involved in the deal [ER p. 145].
 
 
 17
 The district court refused to give an entrapment instruction to the jury. Velandia then waived closing argument.
 
 
 18
 It has not been clearly decided whether this court reviews the failure to give a requested jury instruction de novo or for an abuse of discretion, although de novo review has previously been applied to entrapment instructions. United States v. Sotelo-Murillo, 887 F.2d 176, 179-80 (9th Cir.1989) (concluding without deciding that the appropriate standard for reviewing a refusal to give an entrapment discussion is de novo). See also United States v. Brebner, 951 F.2d 1017, 1024 (9th Cir.1991) (de novo review of denial of entrapment instruction).
 
 
 19
 A defense of entrapment is established if the defendant was (1) induced to commit the crime by a government agent and (2) not otherwise predisposed to commit the crime. A defendant must present evidence on both elements of the defense, but only slight evidence is needed to create a factual issue and get the defense to the jury.
 
 
 20
 United States v. Kessee, 992 F.2d 1001, 1003 (9th Cir.1993) (citations and quotations omitted). "If the trial court finds that the evidence presents no genuine dispute about whether the defendant was entrapped, there is no factual issue for the jury, and the court must deny the instruction." United States v. Becerra, 992 F.2d 960, 963 (9th Cir.1993).
 
 A. Evidence of inducement
 
 21
 Velandia did not present even slight evidence that he was induced to engage in the cocaine deal. That Gloria may have sought out sellers of illegal drugs does not support an inference that Velandia was induced. The talk of "pressure" in one of the taped conversations appears to be a reference to Gloria's hospitalization for low blood pressure due to heat and dieting. Velandia requested more time to deliver the drugs because he had to wait for a shipment. Vague references to other people do not indicate inducement.
 
 
 22
 The only direct reference to inducement appears in Velandia's father's testimony that his son was "strapped into" committing the crime by agents. His conclusory statement lacked any specifics, and the defense did not seek to elicit details. Instead, Velandia's attorney directed Velandia's father to "[l]eave this [drug] transaction aside" and to testify only whether he had ever known his son to be involved in drugs, and to Velandia's general reputation. As the government points out, Velandia called his father as a witness for background information only and his father's testimony was explicitly limited by the defense to character evidence. His statement was not evidence of inducement.
 
 B. Evidence of predisposition
 
 23
 The government may not "implant in an innocent person's mind the disposition to commit a criminal act." Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992). We must determine whether there is slight evidence that Velandia was not predisposed to commit the crime before the government's supposed inducement, examining "(1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." Becerra, 992 F.2d at 963 (citation omitted). The most important factor is the defendant's reluctance to engage in the criminal activity. Id. We view the evidence in the light most favorable to the government.
 
 
 24
 Velandia's aunt, father and girlfriend testified generally as to his good character. It is not clear who initially suggested the drug deal; that Gloria had informed on others does not demonstrate that she suggested that they engage in the transactions. Velandia did engage in the deal for profit; his one-third cut of the $500 per kilogram would have been about $8000. Velandia's reluctance was not demonstrated by the two-month period during which he had little contact with Gloria; he had told her he was waiting for a drug shipment. Finally, there was no evidence of inducement.
 
 
 25
 The district court did not err in refusing to give an entrapment instruction.
 
 III. Sentencing
 
 26
 Velandia submitted on November 9, 1992, a report from a psychologist, Dr. Whiting, claiming Velandia suffered from diminished capacity caused by organic brain damage. He also submitted a letter from Dr. Whiting on November 13, 1992, which claimed Velandia's "personality profile" was inconsistent with the "personality profile" of a drug dealer. The letter does not mention brain damage. A minute order of December 1, 1992, stated that the letter did not reach the district court until after the November 16 sentencing hearing, and struck the letter because the defense did not bring it to the court's attention before the hearing. Velandia argues that the district court's failure to consider the letter was error.
 
 
 27
 "A district court's consideration of information outside the record of conviction for sentencing purposes is reviewed for an abuse of discretion." Federal Trade Comm'n v. American Nat'l Cellular, 868 F.2d 315, 322 (9th Cir.1989). The record shows that the court did consider Dr. Whiting's initial report, making a number of references to it at the sentencing hearing on November 16. Dr. Whiting's qualifications and conclusions were discussed at some length.
 
 
 28
 We find the district court did not abuse its discretion by not considering the November 13, 1992, letter from Dr. Whiting. The defense did not bring it to the court's attention before the hearing, and it contained no relevant new information.
 
 
 29
 We AFFIRM Velandia's conviction and sentence.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Velandia claims he was denied discovery of officers' reports related to Gloria. He is wrong. The reports were provided in pretrial discovery