608 F.2d 741
 UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Ramon HERNANDEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus Antonio GASTELUM, charged as Raymond Sepulveda
Mendoza, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge MEJIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier GOMEZ, Defendant-Appellant.
 Nos. 77-3648, 77-3649, 77-3864 and 77-3865.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 12, 1979.
Rehearing Denied in No. 77-3648 Dec. 12, 1979.
 
 Barry Tarlow (argued), Carson Taylor (argued), Taylor, Roth & Grant, Rudolph A. Diaz (argued), Richard Fannan (argued), Eric Multhaup, Los Angeles, for defendants-appellants.
 Andrea Sheridan Ondin, U. S. Atty. (argued), Mark O. Heany, Asst. U. S. Atty. (argued), Los Angeles, Cal., for the U. S.
 Appeal from the United States District Court for the Central District of California.
 Before ELY and WALLACE, Circuit Judges, and FOLEY,* District Judge.
 ELY, Circuit Judge:
 
 
 1
 Appellants, along with two other individuals, were convicted by a jury on charges of having engaged in a heroin distribution scheme.[1] Appellants now raise several issues which they contend compel reversal of their convictions and a new trial. The issues are: (1) whether appellants were entitled to pre-trial disclosure of the address of a government informant, and whether, upon ascertaining that address at trial, the appellants were entitled to a continuance in order to conduct an investigation into the background of the informant, (2) whether the exclusion of the public from the courtroom during a portion of the trial denied appellants of their Sixth Amendment right to a public trial, (3) whether the District Court erred in allowing selective use of co-defendant Hernandez' post-arrest statement against Gomez and Mejia, and (4) whether the evidence entitled Hernandez to an instruction as to his asserted defense of duress. We affirm.I.
 
 
 2
 Appellants, together with two men named Perez and Sota were charged with conspiring to sell a large quantity of heroin, and with consummating such a sale, to government undercover agents. According to the prosecution's evidence, one Smith, an informant for the Drug Enforcement Administration (DEA) and the principal witness establishing the existence of a conspiracy, was contacted by Mejia to assist in locating a buyer for narcotics. Smith arranged a sale of heroin to the government agents after obtaining a sample of the drug and turning it over to law enforcement officers for testing. The appellants and Sota were arrested at the scene of the alleged sale after handing the arresting officers a bag containing what tests established to be three-and-one-half pounds of heroin. Perez was arrested at a residence that surveillance revealed to be frequented by the alleged conspirators and at which ten additional pounds of heroin were seized.
 
 II.
 PRE-TRIAL DISCLOSURE
 
 3
 Appellants filed a pre-trial motion seeking the address of Smith, the principal witness, so that they could conduct an investigation into Smith's background. The District Court declined to order pre-trial disclosure of the address, acting on the basis of an affidavit that detailed the existence of threats against Smith and his family.[2] The trial judge also refused to conduct an evidentiary hearing on the matter at that time.
 
 
 4
 At trial, the requested evidentiary hearing was held after Smith had completed his direct testimony. That hearing resulted in an order requiring Smith to disclose his address to appellants on cross-examination. Appellants promptly sought a two-week continuance in order to commence an investigation of Smith. The District Court refused to delay the trial. Appellants now argue that the District Court's denial of their motion for pre-trial disclosure and their motion for a continuance deprived them of their right to prepare an adequate defense.
 
 
 5
 In light of Smith's role in the narcotics transaction with which appellants were charged, it cannot be said that disclosure of Smith's Identity would not have been "relevant or helpful" to the appellant's defense. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). See Lopez-Hernandez v. United States, 394 F.2d 820, 821 (9th Cir. 1968). The Government has so argued, recognizing the distinction that our decisions have drawn between those situations wherein an informant's role was merely peripheral (See United States v. Connolly, 479 F.2d 930, 933 (9th Cir. 1973), and, in contrast, those situations wherein the informant actually witnessed the crime, or, as here, even helped instigate the criminal transaction (See United States v. Cervantes, 542 F.2d 773, 775 (9th Cir. 1976); United States v. Miramon, 443 F.2d 361, 362 (9th Cir. 1971); Lopez-Hernandez v. United States, supra, 394 F.2d at 821). Because Smith was a participant in the events that were critical to the prosecution's case, no claim could be raised under Roviaro, nor was it raised, that Smith's identity could be lawfully withheld from the appellants.
 
 
 6
 Appellants knew, prior to trial, that Smith was the government informant and that the Government was under court order to make Smith available to them for interviews if Smith was so willing. Smith, however, refused to be interviewed. Though Smith's address was withheld from appellants prior to trial, it was revealed on cross-examination.
 
 
 7
 We recognize that the address of a principal witness, as Smith most assuredly was, is an integral element of identity for without such information, little meaningful inquiry can be made into background information affecting credibility. Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); Alford v. United States, 282 U.S. 687, 693, 51 S.Ct. 77, 75 L.Ed. 736 (1931).
 
 
 8
 We are now urged to hold that it was reversible error to withhold Smith's full identity from the appellants, including Smith's address, until the time of his cross-examination. We decline to make such a holding under the facts of this case. Appellants' reliance upon Smith v. Illinois, supra, for the proposition that they were entitled to pre-trial disclosure of the informant's address is misplaced. In cases such as Smith, the Court found reversible error in the trial court's refusal to allow cross-examination into an informant's address. Unlike the situations presented in Smith and in Alford, the scope of cross-examination was not here curtailed.
 
 
 9
 The facts here are likewise distinguishable from those in our own case of United States v. Harris, 501 F.2d 1 (9th Cir. 1974), wherein we found error in the unsupported refusal to allow any inquiry into an informant's residence. In Harris, we were faced with a situation where at no time during trial did the Government indicate to the court that the informant testifying would be in any danger if his address were revealed on cross-examination. We recognized that "in some instances the trial court could legitimately permit the witness not to disclose his residence" on cross-examination. Id. at 9.[3] Such nondisclosure of an informant's address would be justified, we said, where the answer might subject the witness to harassment, humiliation, or danger. Id. We insisted, however, that curtailment of cross-examination into an informant's address must be supported by some indication, provided either by the Government or the witness, why open-court disclosure should be prevented. Id. We did not decide whether an evidentiary hearing, or even a sworn affidavit, would be required to justify nondisclosure. Appellants claim that the In camera affidavit submitted here, detailing threats made against both Smith and his family, was insufficient indication, as required by Harris, and that an evidentiary hearing was required.
 
 
 10
 In this appeal, there is no need to decide just what quantum or quality of evidence is necessary to justify nondisclosure of an informant's address on cross-examination. This is because the appellants were allowed full cross-examination and did learn Smith's address. Furthermore, we question whether Harris can be extended so as to reach to requests for pre-trial disclosure of an informant's address. We do hold that the trial judge was justified in relying on the sworn affidavit before him when he refused to order the disclosure prior to trial. It follows A fortiori that if a court could properly curtail cross-examination into an informant's residence because of demonstrated danger to his physical safety, it would not be error to refuse such disclosure prior to trial. It is no secret that informers whose identities are revealed prior to trial are often "among the missing" when the trial date finally arrives. See United States v. Pennick, 500 F.2d 184, 186 (10th Cir. 1974), Cert. denied, 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974). While an evidentiary hearing might be the better practice, we will not hold here that it was reversible error for the District Court to have based its determination upon the sworn affidavit before it.
 
 III.
 CONTINUANCE
 
 11
 Next, appellants complain that their ability to prepare an adequate defense was prevented when the District Court denied their motion for a two-week continuance which would have enabled them to investigate Smith's reputation among his neighbors. Appellants cannot claim that they were unaware of the substance of Smith's testimony, his arrest record, or his prior history of drug dealings. This information was revealed during extensive discovery prior to trial. Furthermore, Smith's address was provided to appellants at trial on Tuesday, August 9th. Evidence was still being presented through the following Thursday, August 18th. Appellants had ample opportunity to cross-examine Smith and make inquiry of Smith's neighbors during trial.
 
 
 12
 The District Court has broad discretion in granting or denying a continuance, and that decision is not subject to review unless it is clearly shown that the involved discretion has been abused. Issacs v. United States,159 U.S. 487, 489, 16 S.Ct. 51, 40 L.Ed. 229 (1895); United States v. Rinn,586 F.2d 113, 118 (9th Cir. 1978). Actual prejudice must be shown before a trial court's denial of a continuance will be reversed. United States v. Harris, supra, 501 F.2d at 4-5.
 
 
 13
 Appellants have made no showing of what additional information would have been disclosed at trial to impeach Smith had a continuance been granted. Appellants have done no more than assert that an investigation "was Likely to lead to persons who knew of (Smith's) reputation." This is clearly insufficient to warrant the disturbance of the District Court's discretionary exercise. What Might have been discovered had a continuance been granted is inadequate to establish prejudice. United States v. Mirenda, 443 F.2d 1351, 1355 (9th Cir. 1971), Cert. denied, sub nom., 404 U.S. 966, 92 S.Ct. 343,39 L.Ed.2d 286 (1972).
 
 
 14
 No actual prejudice was established by the appellants; therefore, there was no abuse of discretion in the denial of the motion for continuance.
 
 IV.
 PUBLIC TRIAL
 
 15
 At the conclusion of opening statements, the Government asked the court to exclude all spectators from the courtroom during the testimony of its lead witness, the informant Smith. This request was made on the basis of the sworn affidavit of a government agent named Matz, an affidavit setting forth the threats of danger to Smith and his family. The court imposed the exclusionary order, over appellants' objection, finding that the witness was "in fear of his own personal safety." Defense counsel then requested, and was denied, an evidentiary hearing on the exclusion order.
 
 
 16
 Smith testified, with the courtroom doors closed to the public, for approximately two hours during the first day of the trial. Before recalling Smith for cross-examination on the following day, the court, without jury, and with spectators still excluded, held the evidentiary hearing to determine if the appellants should be permitted to inquire into Smith's address on cross-examination. At this hearing it was discovered that one of Smith's telephone numbers was listed in the directory under his wife's name and that this listing reflected Smith's address. The Government then withdrew its request for a closed session, and all further trial proceedings, including the complete cross-examination of Smith, were conducted free of the exclusionary order.
 
 
 17
 Appellants forcefully argue that their Sixth Amendment right to a public trial was violated by the exclusion of the public during Smith's direct examination and during the hearing on the issue of address disclosure. Because the District Court had sufficient factual justification to conclude that Smith or his family might be in physical danger had the public been admitted to view his direct testimony, we hold that the exclusionary order was appropriate and did not deny appellants their Sixth Amendment rights.
 
 
 18
 At the outset we note that the problem recently resolved by the Supreme Court in Gannett Co., Inc. v. DePasquale, --- U.S. ----, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), is different from ours. In Gannett Co., Inc., the Supreme Court held that the Sixth Amendment does not guarantee the public an affirmative right of access to pretrial proceedings when all participants in the litigation agree that the public should be excluded to protect the fair trial rights of an accused. Id. at ----, 99 S.Ct. 2898. Here, we are asked to decide under what circumstances the public may be barred from the courtroom when all defendants insist that the trial be open at all times.
 
 
 19
 An accused's right to a public trial is a fundamental precept of our judicial process. The Sixth Amendment guarantees "(i)n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."
 
 
 20
 The Sixth Amendment embodies "(t)he traditional Anglo-American distrust for secret trials," (In re Oliver, 333 U.S. 257, 268, 68 S.Ct. 499, 505, 92 L.Ed. 682 (1948)) and reflects "the notion, deeply rooted in the common law, that 'justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, at 14, 75 S.Ct. 11, 99 L.Ed. 11." Levine v. United States, 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960). Furthermore, opening judicial proceedings to "contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." In re Oliver, supra, 333 U.S. at 270, 68 S.Ct. at 506.
 
 
 21
 We have long recognized that one of the main purposes for a public trial "is the reasonable possibility that persons unknown to the parties or their counsel, but having knowledge of the facts, may be drawn to the trial . . . ." Tanksley v. United States, 145 F.2d 58, 59 (9th Cir. 1944). Nonetheless, the right to a public trial does not preclude a limited exclusion of spectators when there is a demonstrated need to protect the witness from threatened harassment or physical harm. United States v. Eisner, 533 F.2d 987, 993-94 (6th Cir. 1976), Cert. denied, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); United States ex rel. Lloyd v. Vincent, 520 F.2d 1272, 1274-75 (2nd Cir. 1975), Cert. denied, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975); United States ex rel. Orlando v. Fay, 350 F.2d 967, 971 (2nd Cir. 1965).
 
 
 22
 The right to a public trial "has always been interpreted as being subject to the trial judge's power to keep order in the courtroom. Were this not so a public trial might mean no trial at all at the option of the defendant and his sympathizers." United States ex rel. Orlando v. Fay, supra, 350 F.2d at 971; Accord, Geise v. United States, 262 F.2d 151, 156-57 (9th Cir. 1958), Cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959) (exclusion power to prevent pressures or embarrassment to young witnesses and young victim in rape prosecution).
 
 
 23
 An accommodation must be made of the individual's right to a public trial and those societal interests that might justify closing the courtroom to the public. United States ex rel. Lloyd v. Vincent, supra, 520 F.2d at 1274. The power to order the courtroom closed to the public "should be sparingly exercised and limited to those situations where such action is deemed necessary to further the administration of justice." Id. If it is determined that the trial court improperly excluded the public, prejudice necessarily is implied, and it is not required that an accused make any showing of harm from the exclusion of the public since it would be difficult, if not impossible, to show any definite personal injury. Tanksley v. United States, supra, 145 F.2d at 59; See United States v. Eisner, supra, 533 F.2d at 993; United States v. Kobli, 172 F.2d 919, 921 (3rd Cir. 1949). To require the accused to establish prejudice because of the exclusion would impair or destroy the safeguard. Id.
 
 
 24
 The exclusionary order here challenged was reasonably limited to the circumstances for which it was invoked. The District Court, acting on the basis of the affidavit submitted by Agent Matz, concluded that an exclusionary order was necessary to protect Smith and his family from harassment and physical harm.
 
 
 25
 The appellants contend that the affidavit was an insufficient factual basis upon which to determine that an exclusionary order was justified. They contend that because the affidavit did not expressly claim that Smith feared for his and his family's safety it was unreasonable for the District Court and the Government to conclude that Smith feared possible harassment and physical harm if he testified. Our review of the affidavit reveals that it details numerous calls made to the Smiths where the caller hung up immediately after the phone was answered, that Smith's wife had received an anonymous telephone call in which the caller threatened that she would not be Mrs. Smith for long, that Smith had reported to law enforcement officers that he had learned that a "contract" had been put out on his life, and that Smith told Agent Matz that he did not want his name and address disclosed to the appellants. In granting the exclusionary order, the district judge remarked:
 
 
 26
 Based upon the information I have read about Mr. Smith, I am going to grant the motion as to his testimony. There have been . . . as I understand it, he is in fear of his own personal safety. His wife is in the hospital with a stroke and has had some problems . . . .
 
 
 27
 Given the facts put before the District Court, we think that there was a reasonable basis upon which to conclude that Smith had reason to fear for his safety. We wish to make it absolutely clear that the better course would have been for the trial judge to conduct an evidentiary hearing into the matter.[4] In the circumstances of this case, however, we hold that it was within the court's power to make the required findings on the basis of the affidavit.
 
 V.
 POST-ARREST STATEMENT
 
 28
 Appellants Mejia and Gomez, joined by Gastelum (Mendoza), argue that the selective introduction of portions of a post-arrest statement made by co-defendant Hernandez prejudiced them in the presentation of their defense. The statement given by Hernandez following his arrest implicated not only himself in certain acts of the narcotics conspiracy, but also, his co-defendants as well.
 
 
 29
 In order to avoid the Sixth Amendment right of confrontation problems raised by Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), when a confession of a non-testifying defendant implicating other co-defendants is admitted into evidence, the Hernandez statement was admitted in edited form, deleting any reference to all of the accuseds except Hernandez. The District Court refused to allow any inquiry into the deleted material.
 
 
 30
 Mejia, Gomez, and Gastelum theorize that inquiry into the unedited statement was necessary to show that they were not named in Hernandez' statement as participants in the acts of the conspiracy and that other persons committed the acts. They also contend that knowledge of the role played by each co-defendant was necessary to demonstrate involvement in the conspiracy and that the full, unedited, statement would reveal that they did not have such requisite knowledge.[5] In the alternative, appellants sought separate trials in which, they contend, the unedited statements would have been admissible.
 
 
 31
 Our conclusion is that there was no error in the admission of the edited statement in which all references to the co-defendants were excised. Such a procedure is proper if there is no "substantial threat" to an accused's right of confrontation and cross-examination of witnesses. Posey v. United States, 416 F.2d 545, 551 (5th Cir. 1969), Cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); See United States v. Trudo, 449 F.2d 649, 652-53 (2nd Cir. 1971), Cert. denied, 405 U.S. 926, 92 S.Ct. 975, 30 L.Ed.2d 799 (1972); United States v. Addonizio, 451 F.2d 49, 71 (3rd Cir. 1971), Cert. denied, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); United States v. Kershner, 432 F.2d 1066, 1071 (5th Cir. 1970); United States v. Fleming, 504 F.2d 1045, 1050 (7th Cir. 1974); Williams v. Nelson,457 F.2d 376, 377-78 (9th Cir. 1972). After careful review of the record, we conclude that the redacted post-arrest statement of Hernandez, as related in the testimony of Agent Matz, successfully eliminated any suggestion of involvement of other co-defendants in the acts described therein. See United States v. Roach, 590 F.2d 181, 185 (5th Cir. 1979) ("Where a statement does not allude to the defendant, White v. United States, 415 F.2d 292 (5th Cir. 1969), Cert. denied, 397 U.S. 993, 90 S.Ct. 1128, 25 L.Ed.2d 400 (1970), or where all references to the defendant have been deleted, United States v. Gray, 462 F.2d 164 (5th Cir.), Cert. denied, 409 U.S. 1009, 93 S.Ct. 452, 34 L.Ed.2d 303 (1972), his right of confrontation is not abridged."); Hodges v. Rose, 570 F.2d 643, 648 n. 10 (6th Cir. 1978), Cert. denied, 436 U.S. 909, 98 S.Ct. 2243, 56 L.Ed.2d 408 (1978).
 
 
 32
 The appellants would have the best of two worlds. They insist that the trial court should have deleted from Hernandez' statement all references to their own conduct, as required by Bruton, but at the same time, each claims a right to use certain of the deleted portions which implicated their co-defendants to de-emphasize their own involvement as shown by other evidence. Not only do we find that such a procedure would unjustly prejudice the non-confessing co-defendants, but our reading of the statement made by Hernandez leads us to conclude that rather than being exculpatory or explanatory, the deleted material convincingly serves to corroborate other prosecutorial evidence that was presented against the appellants. There was no reversible error in the trial court's refusal to allow any greater inquiry than it did into the statement. The appellants have not been able to point to any "concrete examples where any exculpatory or explanatory statements had been deleted." United States v. Kershner, supra, 432 F.2d at 1072; Posey v. United States, supra, 416 F.2d at 551.
 
 
 33
 Furthermore, we hold that the District Court's refusal to grant a severance to Mejia, Gomez, or Gastelum was not an abuse of the court's discretion. United States v. Vigil, 561 F.2d 1316, 1317 (9th Cir. 1977). Not only do we view the deleted portions of the Hernandez statement as being extremely damaging to the appellants, but we also are inclined to the view that the statement would have been inadmissible hearsay at a separate trial. Having held that the admission of Hernandez' post-arrest statement was not error, we likewise hold that there was no abuse of discretion in denying the motions to sever. Posey v. United States, supra, 416 F.2d at 551.
 
 VI.
 JURY INSTRUCTION
 
 34
 The District Court properly rejected Hernandez' proferred instruction on his defense of alleged duress, a defense based upon his asserted fear of harm to either himself, his wife, or his child.
 
 
 35
 Duress is a defense to a crime only "when another's unlawful threat of death or serious bodily injury reasonably causes the defendant to do a criminal act in a situation in which there was no other opportunity to avoid the threatened danger." United States v. Michelson, 559 F.2d 567, 569 (9th Cir. 1977). A defendant who invokes the excuse of duress must establish that his fear was well-grounded. United States v. Gordon, 526 F.2d 406, 407 (9th Cir. 1975).
 
 
 36
 The record in this case demonstrates, at most, that Hernandez was in a "depressed" state and was rather tense and nervous after being involved in an accident in which his cousin was killed, that his wife found a note stating that if Hernandez did not pay $4000 "there would be consequences," that Hernandez told his wife that "he had lots of pressure by some people" and that she and her daughter "were in danger," and that as time passed, Hernandez became "more and more nervous and more and more depressed." At no time did Mrs. Hernandez report any of these so-called threats of danger to the police.
 
 
 37
 Having failed to establish the existence of a well-grounded fear for his own or his family's safety, that there was any present threat or coercion directed against him or his family, or that there was no reasonable avenue to escape the supposed danger, Hernandez was not entitled to an instruction relating to alleged duress.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable Roger D. Foley, United States District Judge, District of Nevada, sitting by designation
 
 
 [1]
 The four-count indictment charged appellants as follows:
 Count One: All named appellants and Jose Perez and Manuel Sota were charged with conspiring to possess and distribute a controlled substance, in violation of 21 U.S.C. § 846;
 Count Two: Hernandez, Sota and Gastelum (charged as Mendoza) were charged with possession with intent to distribute three-and-one-half pounds of heroin, in violation of 21 U.S.C. § 841(a)(1); Mejia, Gomez, and Perez were charged with aiding and abetting in that crime;
 Count Three: Hernandez was charged with distributing three-and-one-half pounds of heroin; the other named appellants and Perez and Sota were charged with aiding and abetting in that crime;
 Count Four: Gastelum (charged as Mendoza), Sota, and Perez were charged with possession with intent to distribute ten pounds of heroin, in violation of § 841(a)(1).
 
 
 [2]
 The Government submitted an affidavit of DEA Special Agent Davis R. Matz to the District Court to support its opposition to the appellants' motion to reveal the informant's identity. In the affidavit, Agent Matz set forth certain facts which tended to support the District Court's conclusion that Smith reasonably feared for his safety, such as:
 (a) guns and ammunition were found at the scenes of arrest:
 (b) Smith was assisting the Government in an undercover capacity in other DEA investigations;
 (c) Smith and his family reported having received "numerous telephone calls in which the caller hung up immediately after the phone was answered";
 (d) an anonymous telephone caller threatened to Mrs. Smith that she might not remain Mrs. Smith for much longer;
 (e) Smith reported learning from an individual incarcerated in a Mexico jail that a "contract" had been put out on him since the time of the arrests in this case;
 (f) Smith also reported that Mejia told him of a shooting in Mexico and then stated to Smith "That's what happens to people who cross me";
 (g) Mrs. Smith had suffered a stroke and was in the intensive care unit of a Los Angeles hospital;
 (h) Smith did not want appellants to learn his name or address from the Government.
 
 
 [3]
 See United States v. Rangel, 534 F.2d 147, 148 (9th Cir. 1976), Cert. denied, 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976) (nondisclosure upheld where evidence presented at hearing on matter indicated threats had been made on the informant's life)
 
 
 [4]
 See United States ex rel. Lloyd v. Vincent, 520 F.2d 1272, 1275 (2d Cir. 1975), Cert. denied, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975); United States ex rel. Latimore v. Sielaff, 561 F.2d 691, 696 (7th Cir. 1977)
 
 
 [5]
 Appellants' assertion that they could use the post-arrest statement to prove that they did not have knowledge of the acts of other participants in the conspiracy represents a misunderstanding of the Government's burden in a conspiracy prosecution. It is not necessary for the Government to prove that each defendant knew the identity and role of each of the co-conspirators or the details of the operations or any particular plan. United States v. Thomas, 586 F.2d 123, 132 (9th Cir. 1978). It is sufficient to show that each defendant knew, or had reason to know, of the scope of the conspiracy and that each defendant had reason to believe that his own benefits were dependent upon the success of the entire venture. United States v. Kostoff, 585 F.2d 378, 380 (9th Cir. 1978)