993 F.2d 885
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Gregory JOHNSON, Defendant-Appellant.
 No. 91-50186.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1993.
Decided May 7, 1993.
 
 Before D.W. NELSON, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Larry Johnson was convicted of one count of conspiring to manufacture and distribute rock cocaine in violation of 21 U.S.C. § 846, and twelve counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 235 months imprisonment. Johnson appeals both his conviction and his sentence. We affirm.
 
 FACTS
 
 3
 In November 1988, the FBI, with the aid of an informant, began an undercover drug investigation of several individuals suspected of being involved in a conspiracy to distribute cocaine. These individuals were associated with MCC, a carpet cleaning business in Gardena, California which was also a suspected "front" for the distribution operation. During the course of the investigation, Johnson was involved in a least two sales of cocaine.
 
 
 4
 At some point, a second informant joined the investigation ("Garrett"). Garrett, who was an active member of the MCC conspiracy, provided the FBI agents with information concerning the distribution activities of the conspiracy. He could not, however, provide much information about the cocaine suppliers. The FBI agents decided it was necessary to tap the MCC phone, and they obtained a wiretap warrant. On September 29, 1989, FBI agents and Los Angeles Sheriffs Department deputies ("LASD") executed search warrants at several homes. Charges were brought against Johnson as well as ten other defendants. Johnson was convicted by a jury and sentenced. His timely appeal followed.
 
 I. Johnson's Brady Challenge
 
 5
 Prior to trial, the government informed the court and the defendants that several LASD deputies who had participated in the MCC investigation had themselves been under investigation for acts of corruption unrelated to this case since sometime before September 29, 1989. Several deputies had subsequently been indicted. The government stated that it did not intend to call any of those deputies as witnesses but, if it decided to call these deputies, the government would supply the defense with all potential impeachment material. Shortly after the trial began, the government did produce the report of the debriefing of an LASD sergeant ("Report"). Johnson then moved the court to dismiss the charges against him on the ground that the government had violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over the Report prior to trial. After a hearing, the district court found that the Report did not contain exculpatory information as to Johnson and that therefore no Brady violation occurred. Johnson appeals this ruling, contending that the general allegations against the LASD were Brady material even without a showing that corruption occurred in the case against him.
 
 
 6
 We review the district court's ruling de novo. United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, 112 S.Ct. 947 (1992). Johnson's argument is without merit. "Under Brady, ... the suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material either to guilt or innocence." Id. Since there was no evidence of misconduct by the LASD in this case, the Report concerning the LASD corruption was not material to the question of Johnson's guilt or innocence. As the district court remarked, it does not necessarily follow that if an officer is "in trouble in something else," he also did something wrong in the instant case.
 
 
 7
 During the Brady hearing it came to light that two deputies who testified earlier in the trial had been accused of corruption in unrelated cases. Insofar as the Report could have been used to attempt to impeach these two witnesses, it may be considered Brady material. Id. Brady, however, only requires that information be disclosed to the defendant when disclosure would be of value to him: this may be some time after the trial has begun. United States v. Span, 970 F.2d 573, 583 (9th Cir.1992). The government offered to let Johnson re-cross-examine the two deputies about the allegations of misconduct against them. After re-cross-examining the deputies outside the presence of the jury, Johnson choose not to call the deputies back for questioning before the jury. Accordingly, there was no Brady violation--the value of the report was not reduced by the fact that Johnson received the report three weeks after the trial began.
 
 II. Examination of Witnesses
 
 8
 Johnson also contends that the district court precluded "effective cross examination of percipient witnesses" concerning the investigation of the LASD during the Brady hearing. In essence, what Johnson actually challenges is the numerous evidentiary rulings of the court sustaining the government's objections to Johnson's questions. The district court's decision regarding the relevance of evidence is reviewed for abuse of discretion. United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991). After reviewing these rulings, we conclude that the district court did not abuse its discretion in sustaining the government's objections. Beyond the court's rulings on relevance, the court did not prevent Johnson's attorney from trying to show that the allegations of misconduct against the LASD constituted exculpatory evidence as to his client. Indeed, the court granted Johnson wide latitude in his questioning.
 
 
 9
 Johnson also contends that the district court abused its discretion when it did not allow him to call at trial another deputy who had been accused of misconduct in an unrelated case. During the Brady hearing, this deputy asserted his Fifth Amendment privilege against self-incrimination. A defendant cannot call a witness to testify for the sole purpose of having that witness exercise his Fifth Amendment privilege. United States v. Espinoza, 578 F.2d 224, 228 (9th Cir.), cert denied, 439 U.S. 849 (1978). Accordingly, the district court did not prevent Johnson from conducting effective cross-examination nor did it abuse its discretion by not allowing Johnson to call a deputy to the stand who refused to testify.
 
 III. Denial of Request to Call Gordon
 
 10
 Johnson also challenges the district court's refusal to allow him to call the prosecuting attorney, John Gordon, to the stand during the Brady hearing. "As a general rule federal courts refuse to permit a prosecutor to be called as a witness in a trial in which he is a participant unless there is a 'compelling need.' " United States v. Dupuy, 760 F.2d 1492, 1498 (9th Cir.1985). There was no compelling need to call Gordon. The facts of Gordon's inquiry into which LASD deputies were involved in the search of the defendants' homes were already known. Further, the district court had already allowed two U.S. attorneys who were involved in the LASD investigation to testify in detail about their communications with Gordon. Finally, there was no basis for Johnson's request. After hearing many witnesses, the court concluded there still had been no showing of corruption in this case that would lead to the conclusion that the Report was Brady material. Gordon's knowledge of the Report was not relevant unless Johnson first established that the Report contained Brady material.
 
 IV. Evidence From the Wiretap
 
 11
 Prior to trial, Johnson joined in a co-defendant's motion to suppress wiretap evidence, which was denied. Johnson argues that the district court erred in not suppressing the evidence gathered from the wiretap.
 
 
 12
 Before turning to the merits, we must address the government's claim that Johnson is without standing to challenge the wiretap. Standing issues are reviewed de novo. United States v. Calhoun, 542 F.2d 1094, 1097-98 (9th Cir.1976), cert. denied, 429 U.S. 1064 (1977). A defendant does not have standing to challenge a wiretap unless he was a party to the intercepted conversations or he had a privacy interest in the premises housing the tapped phone. Id. at 1098.
 
 
 13
 The parties agree that Johnson's phone was called from the MCC phone 147 times from February 1989 until October 1989. The government contends, however, and Johnson does not deny, that there was no evidence that Johnson participated in any of these conversations. Therefore, because there is no showing that any of Johnson's conversations were intercepted, he is without standing to challenge the wiretap.
 
 V. Sufficiency of Evidence
 
 14
 Next Johnson argues that, at most, the government proved the existence of multiple conspiracies rather than a single conspiracy. Johnson also argues that even if there was a single conspiracy, there was no evidence that he was a member. We review the evidence in the light most favorable to the government and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 15
 This circuit uses a factor analysis to determine whether the evidence supported a finding of a single conspiracy. United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984), cert. denied 471 U.S. 1103 (1985); United States v. Zemek, 634 F.2d 1159, 1168 (9th Cir.1980), cert. denied, 450 U.S. 916 (1981). The relevant factors are: the nature of the scheme; the identity of the participants; the quality, frequency and duration of each conspirator's transactions; and the commonality of time and goals. Bibbero, 749 F.2d at 581. To prove an overall conspiracy, the evidence must show that all the defendants were involved. Id.
 
 
 16
 There was substantial evidence in this case to support the jury's finding that a single conspiracy existed. First, focusing on the nature of the scheme, this was a well structured centralized business with a hierarchy of authority. At the apex was co-defendant Rick Cunningham. Below him were members with jobs at different levels of authority: some members distributed cocaine, others collected payment and took orders for cocaine over the MCC phone, others worked as couriers, look-outs, or brokers. Second, turning to the identity of the participants, all the defendants were connected in some way to MCC. Third, focusing on the quality, frequency and duration of each conspirator's transactions, it is relevant that both the key participants and the method of operation remained constant. Bibbero, 749 F.2d at 587. Fourth, turning to the commonality of time and goals, we can assume that Johnson and his co-defendants were interested in distributing as much cocaine as possible. Accordingly, all shared an interest in the success of this operation. See e.g., United States v. Arbelaez, 719 F.2d 1453, 1458 (9th Cir.1983).
 
 
 17
 Once the existence of a single conspiracy is established, even a "slight connection" is sufficient to find that a defendant was part of the conspiracy. Bibbero, 749 F.2d at 587. "It is not necessary for the government to prove that the appellants knew the identity and role of each of the co-conspirators or the details of the operations or any particular plan." United States v. Hernandez, 608 F.2d 741, 748 n. 5 (9th Cir.1979). Rather, it is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that his benefits were dependent upon the success of the entire venture. Bibbero, 749 F.2d at 588.
 
 
 18
 While Johnson appears to have entered this conspiracy later than the other defendants, there was sufficient evidence to establish his membership. There was evidence to connect Johnson to MCC, and thus it is reasonable to conclude that Johnson had reason to know the scope of Rick Cunningham's organization. This conclusion is buttressed by the fact that the transactions involved large sums of money and large quantities of cocaine. Someone in Johnson's position would reasonably conclude that Rick Cunningham had a large and carefully structured organization. There also was sufficient evidence to find that Johnson had reason to believe that his benefits depended upon the success of the entire venture, since to achieve his goal of selling and distributing cocaine Johnson had an interest in seeing the MCC venture succeed. Arbelaez, 719 F.2d at 1458.
 
 
 19
 Johnson also argues that the fact that some cocaine was found in his home is insufficient to support his convictions for possession with intent to distribute because there is no evidence the cocaine belonged to him. It is doubtful the cocaine belonged to Johnson's young baby, there was no suggestion that it belonged to his wife--no one else was living at his home. Also, an undercover officer identified Johnson as the man who delivered the rock cocaine to co-defendant Jeffrey Young during a transaction on September 1, 1989. Johnson was also identified in relation to another transaction with Young.
 
 
 20
 We conclude that there was sufficient evidence from which a reasonable trier of fact could have found the essential elements of the counts against Johnson beyond a reasonable doubt.
 
 VI. Johnson's Sentence
 
 21
 The district court sentenced Johnson to 235 months imprisonment. The sentence was the result of several upward adjustments. Johnson requested the court to grant him a downward departure based on a variety of factors including his medical disability, long work history, and honorable discharge from the service, as well as the fact that this was his first offense. The district court held that Johnson had suggested no legal ground for departure under the guidelines. Johnson argues that the district court did not realize that it had authority to depart and that therefore this case should be remanded for resentencing.
 
 
 22
 The court's legal determination whether a specific mitigating circumstance justifies a downward departure is reviewed de novo. United States v. Fairless, 975 F.2d 664, 666 (9th Cir.1992). Johnson's request for a downward departure did not rest on any mitigating circumstance that would permit departure under the guidelines. Johnson did not argue that he fell within any of the categories of mitigation recognized by the guideline. He did not present the court with a mitigating circumstance of the kind or degree that the Sentencing Commission did not adequately take into account when formulating the guidelines. See U.S.S.G. Ch. 1, Pt. A, 4(b). Nor did he argue that although a factor was considered, this was an "extraordinary circumstance" United States v. Boshell, 952 F.2d 1101, 1107 (9th Cir.1991). Accordingly, the district court correctly found that Johnson had failed to identify a legal ground for departure.
 
 
 23
 Accordingly, we affirm both Johnson's convictions and sentence.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3