# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLORIA BARAJAS,
      *Petitioner-Appellee,*

v.

KAREN WISE, Parole Agent,
      *Respondent-Appellant.*

No. 06-15494

D.C. No.
CV-02-06202-DLB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Dennis L. Beck, Magistrate Judge, Presiding

Argued and Submitted
December 7, 2006—San Francisco, California

Filed March 23, 2007

Before: Myron H. Bright,* Dorothy W. Nelson, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, Carlos A. Martinez, Supervising Deputy Attorney General, and Marcia A. Fay, Deputy Attorney General, Sacramento, California, briefed for the appellant. Ms. Fay argued for the appellant.

Jacob M. Weisberg and Lawrence Gibbs, Berkeley, California, briefed for the appellee. Mr. Weisberg argued for the appellee.

## OPINION

BRIGHT, Circuit Judge:

In August 1998, a Fresno County, California, Superior Court jury convicted Petitioner-Appellee Gloria Barajas ("Barajas") of conspiring to sell, possessing, transporting, and offering to sell heroin based on the testimony of an under-cover informant. She was sentenced to three years in state prison. Her direct appeals failed, as did her state habeas petition. In February 2006, a federal district court granted Barajas' habeas petition, holding that the state trial court's refusal to order production of the informant's current and former addresses violated the Confrontation Clause. This appeal by Respondent-Appellant parole agent Karen Wise ("the state") followed.

We conclude that clearly established federal law requires the prosecution to provide reasons specific to the case in litigation if it declines to disclose the names and addresses of key witnesses. In this case, the testimony of the informant represented the only evidence against Barajas, and the state provided no reasons specific to this case why it should not disclose the information. In accepting the state's arguments, the state court applied a standard that was objectively unreasonable. We affirm the grant of relief.

## I.

Barajas met longtime confidential drug informant Maria Arellano in January 1998. Barajas gave Arellano the phone number of her brother-in-law, Juan Hernandez. Hernandez arranged to sell Arellano ten ounces of heroin for $12,000. Arellano notified police, who arranged for a controlled buy of the drugs.

Hernandez was arrested during the drug buy. Officers arrested Barajas the next day without incident. She consented

to a search of her house and car, which produced no evidence of involvement in narcotics.

Two weeks later, Arellano received $4,000 for her work as an informant. A police officer testified that she would not have been paid if the arrests had not occurred, but that the amount she would be paid was not determined until after Barajas' arrest.

Before trial, the prosecutor provided a witness list to Barajas' attorneys that did not list Arellano's name or address. The prosecutor wrote that "[t]he confidential informant will be disclosed one week before the trial date . . . and will be available for interview." Disclosure, he added, was being delayed "as disclosure at this time would compromise our ongoing investigations on other cases."

Barajas filed a motion to compel disclosure of Arellano's name earlier or, in the alternative, to dismiss the case. The trial court ordered prosecutors to produce Arellano's name a week before trial, on the schedule originally announced.

After learning Arellano's identity, Barajas filed a motion to compel disclosure of (a) Arellano's current and past addresses for the five years preceding Barajas' arrest; (b) Arellano's arrest and conviction records, if any; (c) evidence of promises or consideration paid to Arellano in connection with Barajas' case; and (d) a copy of the California Department of Justice Bureau of Narcotics Enforcement manual on supervising and/ or controlling informants. The district attorney provided (b) and (c), but objected to (a) and (d).

In its response to Barajas' motion for discovery of Arellano's addresses, the state argued:

> [D]isclosure of either current or former addresses jeopardizes the informant's ability to continue to work as an informant. In respect to both classifica-

> tions of addresses, once an investigator begins poking around the address, talking to neighbors, and otherwise communicating either directly or inferentially that the person in question is an informant, or just an unsavory witness, the informant's ability to continue working in an anonymous fashion [is injured]. The risk of threats or harm to the informant is increased dramatically once her address is released.
>
> . . . .
>
> In the case at bar the informant will not be painted as a convicted felon and drug addict but will be described as a person who has worked as an informer for about 20 years, has no misdemeanor or felony convictions and works strictly for money. In this case she was paid $4000 for her services. Her background will be shown. Therefore this informant will be put in the "proper setting."

The prosecution did not distinguish between pre-trial and at-trial disclosure.

After a continuance, the court heard Barajas' motion to compel discovery. Barajas argued Arellano was "an enigma," and that she required Arellano's addresses to put her in her "proper setting." The state replied that Barajas had made no showing of why she needed the addresses. To release the addresses, the state argued, would affect Arellano's future effectiveness and "subject her to risks and danger because there is no question when you are a tattle tale or snitch people don't like you." Moreover, the prosecutor said, Arellano had been interviewed for thirty minutes by Barajas' counsel. She had no criminal record and admitted she earned money as an informant in this and other cases. Disclosure of her address, the state added, "is not going to add anything to that."

The trial court summarily denied the request for disclosure of Arellano's addresses. After the conclusion of her state court proceedings Barajas filed this § 2254 petition in federal district court. The district court rejected her insufficiency of the evidence claim but granted relief because the state courts' refusal to order production of Arellano's current and former addresses violated Barajas' Sixth Amendment right to confront her accuser.

Here, the state challenges the district court's ruling, arguing that clearly established federal law, as determined by the United States Supreme Court, does not require prosecutors to disclose current and former addresses of confidential informants before or at trial.

## II.

This court reviews *de novo* a district court's decision to grant or deny a petition for habeas corpus, *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir. 1994), and its factual findings for clear error, *Bonin v. Calderon*, 59 F.3d 815, 823 (9th Cir. 1995).

This petition was filed after the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"); consequently, our review is governed by AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).

The standards of review under AEDPA are:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

A state court decision is "contrary to" clearly established federal law if it arrives at a conclusion opposite to that of the Supreme Court on a question of law, or decides the case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

To be an "unreasonable application of" clearly established federal law, the state court decision must have identified the correct legal rule but unreasonably applied it to the facts at hand. *Id.* at 406.

**[1]** In its decision below, the district court relied on *Smith v. State of Illinois*, 390 U.S. 129 (1968). In *Smith*, the Court explained that

> [W]hen the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bring-

ing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131. *Smith* reinforces the fundamental right of a defendant to confront witnesses against her, a right which states must honor under the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The main mechanism for confrontation is cross-examination:

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

*Davis v. Alaska*, 415 U.S. 308, 316 (1974).

**[2]** The identity of an informant is "the very starting point" of an effective cross-examination. *Smith*, 390 U.S. at 131. "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused . . . the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957). Moreover, when an informant is a participant in the events critical to the prosecution's case, no claim may be raised under *Roviaro* that the informant's identity can be lawfully withheld from the appellants — disclosure is inherently "relevant and helpful." *United States v. Hernandez*, 608 F.2d 741, 744-45 (9th Cir. 1979).

The state reads Barajas' habeas petition as claiming that she was denied *pre-trial* disclosure of Arellano's past and present addresses. In the state's view, her claim therefore falls outside the ambit of *Smith*, because *Smith* dealt only with a failure to disclose the name and address of a confidential informant *at trial*. Barajas replies that, although the request for information was made before the trial, the timing of the request was consistent with California law. Therefore, Barajas argues, although the request was made before the trial, it was not merely a request for pre-trial disclosure. Barajas' motion, for example, cited *Roviaro*, 353 U.S. 53 (requiring disclosure of an informant's identity); *Alford v. United States*, 282 U.S. 687, 692 (1931) (requiring disclosure at trial of witness's address in order to put the witness in her "proper setting"); and *Smith*, 390 U.S. 129 (requiring disclosure of informant's address at trial).

The state in this case protested *any* disclosure of Arellano's present or past addresses, both prior to trial and at trial. The state argued that the Confrontation Clause only required Arellano to be put in her "proper setting" during examination, and that her background would be sufficiently explained at trial without disclosing her addresses. Moreover, the trial court made no indication whatsoever that its denial of Barajas' motion was limited to pre-trial disclosure, and both the California Court of Appeal and the federal district court interpreted the ruling to prevent disclosure throughout the trial. Indeed, the California Court of Appeal reasoned that neither pre-trial nor at-trial disclosure was required because cross-examination "was not emasculated." Furthermore, the government did not adopt the position that the trial court's ruling was limited to pre-trial disclosure until the instant appeal, which further suggests that it, too, interpreted the ruling to prevent disclosure throughout the entire trial process.

The state argues that, even assuming the issue is a refusal to disclose the informant's address at trial, there exists no clearly established federal law regarding the showing a prose-

cutor must make to justify nondisclosure. The state asserts that only Supreme Court holdings may be cited to determine clearly established federal law, noting that the district court cited only circuit cases and dicta from a concurring opinion[1] in a Supreme Court case for the proposition that federal precedent requires a more specific showing than the state provided to justify nondisclosure.

**[3]** Although AEDPA directs courts to look to Supreme Court decisions to determine "clearly established Federal law," circuit precedent is informative. "Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.' " *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). "Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation serves to govern prospectively classes of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case." *Id.* at 601 (citing *Green v. French*, 143 F.3d 865, 874 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999)).

**[4]** The district court cited *United States v. Hernandez*, 608 F.2d 741, 745 (9th Cir. 1979), for the proposition that "curtailment of cross-examination into an informant's address must be supported by some indication, provided either by the Government or the witness, why open-court disclosure should be prevented."

---

[1]The district court cited a concurring opinion in *Smith*, 390 U.S. at 134 (White, J., and Marshall, J., concurring) for the proposition that the Government or a witness should come forward with some showing justifying a need to withhold information. "Clearly established Federal law" is to be derived from the holdings, not the dicta, of Supreme Court decisions. *Williams*, 529 U.S. at 412.

This line of reasoning is contradicted, the state argues, by the Fifth Circuit's holding in *United States v. Avalos* that the Supreme Court has "established no hard and fast rule regarding questions about present addresses." 541 F.2d 1100, 1117 (5th Cir. 1976). However, the *Avalos* court also noted, "[W]here the government had reason to believe that two government witnesses' lives were in danger and the witnesses were under the protection of a United States Marshal, the court did not err in prohibiting the defense from asking on cross-examination for the witnesses' present addresses." *Id.* While the Supreme Court may not have drawn a bright line, it did indicate, as did the Fifth Circuit, that *some* showing was necessary to overcome a defendant's right to cross-examine a witness. *Id.*

[5] We recognize that the Supreme Court has cautioned that the right to cross-examine a witness is not absolute. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In this case, however, the district court found correctly that the state courts were objectively unreasonable in applying their latitude to allow the state to withhold Arellano's addresses without *any* showing particular to this case. Indeed, if a prosecutor were only required to make vague and conclusory statements about possible harm to prevent disclosure of an informant's address — such as those made by the prosecutor in the instant case — *Smith* and *Alford* would be rendered ineffectual in virtually every case involving an informant.

## III.

Violations of the Confrontation Clause are subject to harmless error review. *Coy v. Iowa*, 487 U.S. 1012 (1988); *Van*

*Arsdall*, 475 U.S. at 682 ("[T]he denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case."); *Belmontes v. Brown*, 414 F.3d 1094, 1123 (9th Cir. 2005). We must assess the harm of trial errors by determining whether the error had a "substantial and injurious effect or influence in determining a jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Even after AEDPA's passage, federal district courts should always apply the *Brecht* standard when conducting their own independent harmless error review. *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000) ("[T]he *Brecht* standard should apply uniformly in all federal habeas corpus cases under § 2254.").

[6] The Supreme Court has been quite specific in directing how harmless error review is conducted for Confrontation Clause violations. Courts must make such prejudice determinations by excluding any evidence as to which proper confrontation was denied and examining the remaining evidence presented at trial. *Coy*, 487 U.S. 1021-22 ("An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence."). Thus, because the government's failure to provide Arellano's address violated Barajas' confrontation rights, Arellano's testimony cannot be considered in our prejudice analysis.

[7] We cannot conclude that the remaining evidence renders the Confrontation Clause error harmless. Arellano was the only witness against Barajas. Barajas was not present when the drug transaction took place. In fact, no evidence besides the informant's testimony and her relationship with Hernandez connected Barajas to the sale. Because so little remaining evidence was brought to bear against Barajas, a

proper cross-examination of Arellano would be particularly important to the jury's deliberations.

## IV.

The California state courts erred in the negligible burden they placed on the state to justify the withholding of Arellano's addresses from Barajas. The error constitutes an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. By refusing to order disclosure of Arellano's addresses, the state trial court made it impossible for Barajas to effectively cross-examine her. The lack of other evidence against Barajas magnifies this error, which, under governing Supreme Court precedent, we cannot consider harmless.

**AFFIRMED.**